# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MARK HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   17-2324 |
| v. | ) | |
| | ) | |
| MIDWEST GERIATRIC MANAGEMENT, LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Mark Horton, by and through his attorneys, Mathis, Marifian & Richter, Ltd., and for his Complaint against the Defendant, Midwest Geriatric Management, LLC, states as follows:

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful discrimination based on sex, religion, and sexual orientation, together with state law claims. Plaintiff, who had accepted the Defendant's offer of employment in writing, alleges that the Defendant discriminated against him on the basis of his sex, religion, and sexual orientation. Thereafter, despite Plaintiff's acceptance, the Defendant "withdrew" its employment after discovering that the Plaintiff was a homosexual and in a committed marital relationship with another male.

Plaintiff further alleges that the Defendant fraudulently induced him to sign the offer of employment with Defendant, and in reliance on the fraudulent inducement, Plaintiff resigned from his prior employment with a competitor.

## JURISDICTION AND VENUE

1.      Plaintiff brings this action to remedy violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, and to remedy violations of state common law based upon the pendent jurisdiction of this Court pursuant to United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), and 28 U.S.C. § 1367. Jurisdiction of the state law claims is founded upon the pendent or supplemental jurisdiction of the Court pursuant to United Mine Workers of America v. Gibbs, 38 U.S. 715 (1966), and 28 U.S.C. § 1367.

2.      The employment practices and alleged unlawful acts were committed within the jurisdiction of the United States District Court for the Eastern District of Missouri, and Defendant is located in the Eastern District of Missouri.

3.      Plaintiff has complied with all administrative prerequisites by filing timely a Charge of Discrimination based on racial discrimination with the Equal Employment Opportunity Commission ("EEOC") more than 60 days before the filing of this lawsuit. A true and accurate copy of that Charge is attached hereto as Exhibit 1.

4.      The EEOC has issued a right-to-sue letter to Plaintiff. A true and accurate copy of Plaintiff's right-to-sue letter is attached hereto as Exhibit 2.

## PARTIES

5.      Plaintiff, Mark Horton, is male and was and is, at all times relevant herein, a resident of Madison County, Illinois, when Defendant's discriminatory and wrongful conduct occurred.

6.     At all times relevant herein, Defendant, Midwest Geriatric Management, LLC ("MGM"), was and is a Missouri Limited Liability Company doing business in the State of Missouri, and having at least 15 employees.

7.     At all times relevant herein, MGM was engaged in an industry affecting commerce and was an employer within the meaning of 42 U.S.C. §2000e(b), (g) and (h).

## GENERAL ALLEGATIONS

8.     Plaintiff is a homosexual male who has been legally married under the laws of the State of Illinois to his male partner since November 14, 2014.

9.     Prior to accepting employment with the Defendant, MGM, Plaintiff was employed as Vice President of Sales & Marketing with one of MGM's competitors, Celtic Healthcare ("Celtic").

10.     Plaintiff's status as a homosexual male in a lawful married relationship with another male did not negatively affect his job performance with Celtic in any way.

11.     In February of 2016, while still employed by Celtic, Plaintiff received an unsolicited e-mail from Defendant MGM's authorized agent, an executive search firm called "Jobplex," who represented that they had been "exclusively retained to identify a Vice President of Sales and Marketing" for Defendant, MGM.

12.     Plaintiff had never considered leaving his position with Celtic, but Defendant MGM's agent, Jobplex, affirmatively represented to Plaintiff: "I can promise you that it will NOT be a waste of your time."

13.     Based on the representations of MGM's agent, Jobplex, Plaintiff agreed to undergo the application process, including one or more interviews with Defendant MGM's President and C.E.O., Judah Bienstock, and his wife, Faigie "Faye" Bienstock.

14.     Upon information and belief, Judah and Faye Bienstock are of the Jewish faith.

15. Upon information and belief, Judah and Faye Bienstock's Jewish faith plays a large part in their professional lives, and they have made their faith and its influence on their business known.

16. On April 22, 2016, after successfully completing a detailed assessment and interview process, Judah and Faye Bienstock sent Plaintiff a written job offer on behalf of MGM.

17. The job offer was contingent upon a background check, but the written offer contained no time limit for the completion of the background check.

18. After Plaintiff received the job offer, he was informed that a company called "HireRight" had been retained on behalf of Defendant MGM to perform the background check.

19. On or about April 21, 2016, Plaintiff was informed that Defendant MGM's agent, HireRight, was having a hard time verifying Plaintiff's education with two colleges.

20. After investigated the issue, Plaintiff determined that one of the colleges that he had attended had been sold to another university and, as a result, the name had changed and the request for verification needed to be sent to the new entity.

21. Plaintiff further determined that the other college did not have computerized records and, therefore, needed additional time to locate and copy the records.

22. Plaintiff conveyed this information to Jobplex, HireRight and Defendant MGM, including the fact that it could take four to six weeks to obtain the requested information.

23. Neither Jobplex, HireRight nor MGM voiced any concern over the potential delay.

24. On May 4, 2016, Plaintiff signed the written job offer accepting the position of Vice President of Sales and Marketing with Defendant MGM and transmitted the signed

document via e-mail to Faye Bienstock and Jobplex., A copy of the signed written job offer is attached hereto as "Exhibit 3."

25.     On May 4, 2016, with full knowledge that the background check had not yet been completed, Faye Beinstock sent an e-mail on behalf of Defendant MGM responding to Plaintiff's transmission of the signed written job offer accepting the position by stating: *"Wonderful! Congratulations! We are so excited! When will be your anticipated start date? Faye."*

26.     In reliance upon the written job offer that he had signed and accepted, and the confirmation by Faye Beinstock on behalf of Defendant MGM, Plaintiff gave notice to Celtic that he was resigning his employment.

27.     On May 10, 2016, Plaintiff sent an e-mail to Faye Bienstock advising her that Celtic had agreed to release him from his employment early so that he could *"begin his new adventure"* with Defendant MGM.

28.     On that same date, Faye Bienstock responded to Plaintiff on behalf of Defendant MGM, stating, *"We are ready for you whenever works for you!"*

29.     On Thursday, May 12, 2016, Faye Bienstock sent Mr. Horton another e-mail, stating, *"Let's just meet Monday[May 16, 2016 at] 9:00 am to get everything started!"*

30.     In reliance upon the written job offer that he had signed and accepted, and the confirmation by Faye Beinstock on behalf of Defendant MGM, Plaintiff began working with Faye Bienstock to identify and recruit candidates for Defendant MGM's Vice President of Human Resources and Regional Sales Manager positions.

31.     On Friday, May 13, 2016, Faye Bienstock sent Plaintiff an e-mail informing him that he needed to complete the documentation regarding his education and complete a pre-hire

assessment before attending orientation the following week. Faye Bienstock stated after completion of those two items *"[w]e can pick a new start date."*

32.     Plaintiff responded via e-mail that same date by stating that he had been working closely with Defendant MGM's agent the past few weeks, and had visited one of the colleges that day to request a copy of his transcript for verification.

33.     At no time did Faye Bienstock or anyone on behalf of Defendant MGM voice any concern or objection to any delay in obtaining Plaintiff's educational records.

34.     Plaintiff successfully completed the pre-hire assessment.

35.     On Tuesday, May 17, 2016, Plaintiff sent an e-mail to Faye Bienstock in which he updated her on the status of obtaining his educational records, stating that he had reached out to all of his colleges and requested transcripts and diplomas. In passing, Plaintiff disclosed to Faye Bienstock his homosexual relationship by stating: *"My partner has been on me about [my MBA] since he completed his PHD a while back."*

36.     After disclosing his homosexual relationship, Plaintiff personally experienced acts of discrimination by Defendant MGM on the basis of sex, religion, and sexual orientation.

37.     The acts of discrimination were disclosed to Plaintiff in communications from Faye Bienstock, acting within the course and scope of her position and agency with Defendant MGM.

38.     After disclosing his homosexual relationship to Faye Bienstock, the next response Plaintiff received was on May 20, 2016, from Faye Beinstock in which she stated in an e-mail: *"Are you able to come this afternoon? We would like to discuss the status of your employment."*

39.     Plaintiff replied on that same date, stating that he was out of town at the time and unable to come in that afternoon, but would be available on a different date.

40.     At the time, only one week had passed since Faye Bienstock had informed Plaintiff on behalf of Defendant MGM that they could "*pick a new start date*" once Defendant MGM received his records.

41.     On Sunday, May 22, 2016, Faye Beinstock sent Plaintiff an e-mail on behalf of Defendant MGM stating: "*Mark – I regret to inform you that due to the incompletion of the background check of supportive documentation- we have to withdraw our offer letter for employment at MGM. We wish you much luck in your future endeavors. Judah and Faye.*"

42.     At the time Faye Beinstock transmitted the May 22, 2016 e-mail, there were still nine days left prior to the date that Plaintiff had originally informed Defendant MGM that he could begin work.

43.     After Plaintiff received the May 22, 2016 e-mail, he successfully obtained the requested college records himself without any issues.

44.     On June 21, 2016, upon learning that the Vice President of Sales and Marketing position with Defendant MGM was still open, Plaintiff sent an e-mail to Judah and Faye Bienstock stating, in relevant part, "*I would like to meet this week to discuss moving forward with the VP of Sales role with MGM.*"

45.     Although the position was still open, Faye Bienstock responded on behalf of Defendant MGM on June 23, 2016, by stating: "*Thank you Mark for your communication. At this time –we are considering other candidates. We appreciate your continued interest in MGM- and will contact you if we wish to pursue a relationship.*"

## COUNT I
## Title VII Sex Discrimination

46.     Plaintiff incorporates Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Plaintiff proved himself to be qualified for the position of Vice President of Sales and Marketing, and was in fact chosen for that position before MGM learned that he was a homosexual male.

48.     Since at least May 17, 2016, Defendant MGM engaged in the unlawful employment practice of sex discrimination by *"withdrawing"* its offer of employment, which Plaintiff had already accepted, after learning of Plaintiff's homosexual relationship, and refusing to reconsider Plaintiff for the position, in that:

>   a.  MGM treated Plaintiff less favorably because of his sexual orientation, which is necessarily discrimination based on sex;
>
>   b.  MGM treated Plaintiff less favorably because of his association with a person of a particular sex; *i.e.*, his male partner, who is of the same sex as Plaintiff; and
>
>   c.  MGM treated Plaintiff less favorably on the basis of his nonconformity with sex stereotypes and MGM's preconceived definition of how males should behave.

49.     The aforementioned unlawful conduct was directed at Plaintiff because of his male sex.

50.     Plaintiff's association with his male partner motivated MGM to *"withdraw"* its already-accepted offer of employment to Plaintiff.

51.     Plaintiff's sexual orientation is not consistent with MGM's and Faye and Judah Bienstock's perception of acceptable gender roles.

52.     Neither sex, nor association with members of a particular sex, nor compliance with perceived sexual stereotypes is an occupational qualification for the position of Vice President of Sales and Marketing.

53.     The effect of the aforementioned conduct of MGM has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his male sex.

54.     MGM knew, or should have known, of the unlawful employment practices being carried out by its officers and/or employees against Plaintiff.

55.     MGM failed and/or refused to exercise reasonable care to prevent and promptly correct the unlawful employment practices.

56.     MGM's failure and/or refusal to exercise reasonable care to prevent and promptly correct the unlawful employment practices amounted to condonation, ratification, approval, and/or perpetuation of said unlawful conduct.

57.     MGM was responsible for the acts, omissions and unlawful conduct of its officers and/or employees who exhibited unlawful conduct toward Plaintiff including, but not limited to Faye Bienstock and Judah Bienstock, and, as such, acted as the alter ego of its officers and/or employees exhibiting unlawful conduct.

58.     As a direct and proximate result of MGM's unlawful conduct, Plaintiff was subjected to sex discrimination.

59.     As a direct and proximate result of MGM's unlawful conduct, Plaintiff has suffered the unlawful termination of his employment, including the loss of salary, wages, bonuses, benefits and other compensation which his employment with MGM was to entail.

60. As a direct and proximate result of MGM's unlawful conduct, Plaintiff has suffered, and will continue to suffer, severe humiliation, embarrassment, degradation, mental anguish, loss of reputation and standing in the community, and emotional and physical distress.

61. MGM's unlawful conduct was done with malice or reckless indifference to Plaintiff's rights under Title VII, and was so outrageous, extreme, and in disregard of the interests of Plaintiff so as to entitle Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff, Mark Horton, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Midwest Geriatric Management, LLC, as follows:

(a) That a judgment be entered finding that Midwest Geriatric Management, LLC, intentionally discriminated against Plaintiff Mark Horton with malice or reckless indifference to Plaintiff's federally protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-3, as amended by the Civil Rights Act of 1991;

(b) That Plaintiff Mark Horton be awarded all wages, benefits and compensation lost due to Midwest Geriatric Management, LLC's unlawful conduct, including back-pay and front pay, loss of benefits and other compensation, with prejudgment interest, and such other equitable relief as will make Plaintiff whole and as may be necessary to eradicate the effects of the unlawful employment practices;

(c) That Plaintiff Mark Horton be made whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices, including pain and suffering, loss of enjoyment of life, damage to reputation and standing in the community, and humiliation, in amounts to be determined at trial;

(d)    That Plaintiff Mark Horton be awarded all other compensatory and lawful damages permitted by law;

(e)    That Plaintiff Mark Horton be awarded substantial punitive damages;

(f)    That Plaintiff Mark Horton be awarded reasonable attorneys' fees and costs; and

(g)    That Plaintiff Mark Horton be awarded such other and further relief as this Court deems just and proper.

**COUNT II**
**Title VII Religious Discrimination**

62.    Plaintiff incorporates Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

63.    Plaintiff proved himself to be qualified for the position of Vice President of Sales and Marketing, and was in fact selected for that position before the Bienstocks learned that Plaintiff held religious beliefs regarding homosexual marriage and relationships that could not be reconciled with their religious beliefs regarding homosexual marriage and relationships.

64.    Upon learning on or about May 17, 2016 that Plaintiff did not share their religious beliefs, and in fact held different beliefs which permitted him to be in a homosexual marriage and relationship, MGM, by and through its officers and agents Faye and Judah Beinstock, breached its agreement to employ Plaintiff and "withdrew" its previously accepted offer of employment.

65.    MGM breached its agreement to employ Plaintiff by "withdrawing" its previously accepted offer of employment because Plaintiff's religious beliefs regarding homosexual marriage and relationships differed from those held by Judah and Faye Bienstock.

66.    Plaintiff's differing religious beliefs motivated MGM to "withdraw" its already-accepted offer of employment to Plaintiff.

67.    The belief in a particular religion or religious tenet is not an occupational qualification for the position of Vice President of Sales and Marketing.

68.    The effect of the aforementioned conduct of MGM has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because his religious beliefs differ from those of Judah and Faye Bienstock.

69.    MGM knew, or should have known, of the unlawful employment practices being carried out by its officers and/or employees against Plaintiff.

70.    MGM failed and/or refused to exercise reasonable care to prevent and promptly correct the unlawful employment practices.

71.    MGM's failure and/or refusal to exercise reasonable care to prevent and promptly correct the unlawful employment practices amounted to condonation, ratification, approval, and/or perpetuation of said unlawful conduct.

72.    MGM was responsible for the acts, omissions and unlawful conduct of its officers and/or employees, including Faye and Judah Bienstock, who exhibited unlawful conduct toward Plaintiff, and, as such, acted as the alter ego of its officers and/or employees exhibiting unlawful conduct.

73.    As a direct and proximate result of MGM's unlawful conduct, Plaintiff was subjected to religious discrimination.

74.    As a direct and proximate result of MGM's unlawful conduct, Plaintiff has suffered, and will continue to suffer, severe humiliation, embarrassment, degradation, mental anguish, loss of reputation and standing in the community, and emotional and physical distress.

75.     As a direct and proximate result of MGM's unlawful conduct, Plaintiff has suffered the unlawful termination of his employment, including the loss of salary, wages, bonuses, benefits and other compensation which his employment with MGM was to entail.

76.     MGM's unlawful conduct was done with malice or reckless indifference to Plaintiff's rights under Title VII, and was so outrageous, extreme, and in disregard of the interests of Plaintiff so as to entitle Plaintiff to an award of substantial punitive damages.

WHEREFORE, Plaintiff, Mark Horton, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Midwest Geriatric Management, LLC, as follows:

(a)     That a judgment be entered finding that Midwest Geriatric Management, LLC intentionally discriminated against Plaintiff Mark Horton with malice or reckless indifference to Plaintiff's federally protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-3, as amended by the Civil Rights Act of 1991;

(b)     That Plaintiff Mark Horton be awarded all wages, benefits and compensation lost due to Midwest Geriatric Management, LLC's unlawful conduct, including back-pay and front pay, loss of benefits and other compensation, with prejudgment interest, and such other equitable relief as will make Plaintiff whole and as may be necessary to eradicate the effects of the unlawful employment practices;

(c)     That Plaintiff Mark Horton be made whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices, including pain and suffering, loss of enjoyment of life, damage to reputation and standing in the community, and humiliation, in amounts to be determined at trial;

(d)    That Plaintiff Mark Horton be awarded all other compensatory and lawful damages permitted by law;

(e)    That Plaintiff Mark Horton be awarded substantial punitive damages;

(f)    That Plaintiff Mark Horton be awarded reasonable attorneys' fees and costs; and

(g)    That Plaintiff Mark Horton be awarded such other and further relief as this Court deems just and proper.

## COUNT III
### Fraudulent Inducement

77.    Plaintiff incorporates Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

78.    Plaintiff attempted to ascertain whether MGM had any objection to a delay in obtaining his educational records within a four to six week timeline, and exercised reasonable diligence in doing so by promptly informing MGM of said delay.

79.    Having been informed of the delay, MGM nonetheless acknowledged Plaintiff's subsequent acceptance of MGM's written job offer, and thereafter made affirmative representations to Plaintiff confirming that MGM had no objection to said delay by stating, among other things:    *"Wonderful! Congratulations!  We are so excited!  When will be your anticipated start date?"*

80.    In failing to disclose any objection to Plaintiff informing MGM that it would take four to six weeks to obtain his educational records, MGM falsely implied that it had accepted Plaintiff's proposed timeline for obtaining his educational records.

81.    At the time that MGM, by and through its officer and agent Faye Bienstock, made these representations, it knew, or should have known, that it would seek to withdraw or terminate

Plaintiff's employment if it did not receive Plaintiff's educational records in a timeline shorter than that which Plaintiff proposed.

82. The information MGM withheld was a material fact going to the essence of Plaintiff's accepted offer of employment.

83. MGM, by and through its officer and agent Faye Bienstock, made these affirmative representations to Plaintiff with the intent that Plaintiff would rely and act upon them.

84. Plaintiff had no prior knowledge of the falsity of MGM's affirmative representations made by its officer and agent, Faye Beinstock.

85. In reliance upon MGM's acknowledgement of Plaintiff's acceptance of MGM's offer of employment and the statements made by MGM, by and through its officer and agent Faye Bienstock, Plaintiff was induced to tender his resignation from his lucrative position of employment with Celtic.

86. Thereafter, MGM "withdrew" its accepted offer of employment on May 22, 2016, revealing that its earlier implied acceptance of the four to six week delay in obtaining educational records was false.

87. Plaintiff reasonably relied on MGM's implied acceptance of the four to six week delay in obtaining educational records and the statements of MGM's officer an agent, Faye Beinstock, when he accepted the Vice President of Sales and Marketing position with MGM and tendered his resignation from his employment with Celtic.

88. As a direct and proximate result of MGM's fraudulent inducement, Plaintiff has suffered the loss of salary, wages, bonuses, benefits and other compensation from his employment with Celtic.

89.    As a direct and proximate result of MGM's fraudulent inducement, Plaintiff has suffered, and will continue to suffer, severe humiliation, embarrassment, degradation, mental anguish, loss of reputation and standing in the community, and emotional and physical distress.

90.    MGM's unlawful conduct was done with malice or reckless indifference, and was so outrageous, extreme, and in disregard of the interests of Plaintiff so as to entitle Plaintiff to an award of substantial punitive damages.

WHEREFORE, Plaintiff, Mark Horton, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant Midwest Geriatric Management, LLC, as follows:

(a)    That Plaintiff Mark Horton be awarded all wages, benefits, and compensation lost from his employment with Celtic due to Midwest Geriatric Management, LLC's unlawful conduct;

(b)    That Plaintiff Mark Horton be made whole by providing compensation for past and future nonpecuniary losses resulting from Midwest Geriatric Management, LLC's unlawful employment practices, including without limitation pain and suffering, loss of enjoyment of life, damage to reputation, and humiliation, in amounts to be determined at trial;

(c)    That Plaintiff Mark Horton be awarded all other compensatory damages permitted by law;

(d)    That Plaintiff Mark Horton be awarded punitive damages;

(e)    That Plaintiff Mark Horton be awarded costs of this action; and

(f)    That Plaintiff Mark Horton be awarded such other relief as this Court deems just and proper.

Respectfully Submitted,

MATHIS, MARIFIAN & RICHTER, LTD.


By    /s/Mark S. Schuver
      Mark S. Schuver, #6197656
      Natalie T. Lorenz, #06309572
      23 Public Square, Suite 300
      P.O. Box 307
      Belleville, IL 62220
      (618) 234-9800 Phone
      (618) 234-9786 Fax
      mschuver@mmrltd.com
      nlorenz@mmrltd.com

      Attorneys for Plaintiff

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA ☒ EEOC | 560-2017-00407 |

*MISSOURI COMMISSION ON HUMAN RIGHTS*
State or local Agency, if any
and EEOC

| NAME *(Indicate Mr., Ms., Mrs.)* | | S.S. No. |
|---|---|---|
| **Mr. Mark Horton** | HOME TELEPHONE *(Include Area Code)* | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| **8452 Foehrkolb Lane, Edwardsville, IL 62025** | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| **Midwest Geriatric Management, LLC** | **2,000+** | **(877) 215-4650** |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| **6 City Place Drive, St. Louis, MO 63141** | | **St. Louis County** |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☒ RELIGION ☐ AGE | EARLIEST (ADEA/EPA)    LATEST (ALL) |
| ☐ RETALIATION ☐ NATIONAL ORIGIN ☐ DISABILITY ☒ OTHER *(Specify)* sexual orientation | **Approx. May 20, 2016 - present** |
| | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.     I am a gay (homosexual) male and have been legally married to my male partner since November 29, 2014. I accepted a contract of employment with Midwest Geriatric Management, LLC, d/b/a/ MGM Healthcare ("MGM") as Vice President of Sales and Marketing. Immediately after informing ownership/upper management that I am in a gay relationship, my employment was terminated.

II.     I was previously employed as Vice President of Sales & Marketing for Celtic Healthcare ("Celtic"). In February of 2016, while still employed by Celtic, I received an unsolicited e-mail from an executive search firm (Jobplex), which was retained by MGM to seek out a Vice President of Sales and Marketing. I never considered leaving my position with Celtic until I received this solicitation on behalf of MGM.

[Continued on the attached sheets]

*2016 DEC 13 AM 9: — RECEIVED EEOC ST LOUIS DISTRICT*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | *STATE OF FLORIDA    PERSONALLY* |
| | *COUNTY OF LAKE    KNOWN* |
| | *Cynthia G Prevatt* |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
|---|---|
| | *Mark Horton* |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE |

| 11-29-2016 | *Mark Horton* | (Day, month, and year) |
|---|---|---|
| Date | Charging Party (S...) | 11/29/2016 |

CYNTHIA G. PREVATT
MY COMMISSION # FF 089517
EXPIRES: March 25, 2018
Bonded Thru Notary Public Underwriters

**EXHIBIT**

tabbies 1

(M0452984.3)

Charge of Discrimination
Mark Horton v. Midwest Geriatric Management, LLC

As part of the application process, I interviewed with MGM's President and CEO, Judah Bienstock, and his wife, Faye Bienstock. On April 22, 2016, after successfully completing a detailed assessment and interview process, Judah and Faye Bienstock sent me a written job offer on behalf of MGM. The job offer was contingent upon a background check. The written job offer contained no time limit for the completion of the background check.

After I received the job offer, I was informed that Hire Rite, the company retained by MGM to perform the background check, was having difficulty obtaining my records from two colleges. I investigated the issue and determined that one college had been sold to another university and, therefore, the request for records needed to be made to the new entity. The other college did not have computerized records and, therefore, it would take additional time to locate and copy the records. I conveyed this information to Hire Rite, including the fact that it could take 4-6 weeks to obtain the requested information. Neither Hire Rite nor MGM voiced any concern over the delay.

On May 4, 2016, I signed the written job offer accepting the position as Vice President of Sales and Marketing with MGM. Even though the background check had not been completed, MGM congratulated me on my acceptance of the position. I gave notice to my former employer resigning my employment. Initially, I informed MGM that I would not be available to start work until May 31, 2016. However, on May 10, 2016, I sent an e-mail to Faye Bienstock advising her that my former employer had agreed to release me early so that I could *"begin my new adventure"* with MGM. That same date, Mrs. Bienstock responded in an e-mail by stating: *"We are ready for you whenever works for you!"* Thereafter, on May 12, 2016, Mrs. Bienstock sent me another e-mail, stating: *"Let's just meet Monday 9:00 am to get everything started!"*

On May 17, 2016, I sent an e-mail to Faye Bienstock in which I disclosed my relationship to my partner. Mrs. Bienstock responded to this e-mail on May 20, 2016, stating: *"Are you able to come this afternoon? We would like to discuss the status of your employment."* I replied that I was out of town at the time and was unable to come in that afternoon. On Sunday, May 22, 2016, I received an e-mail from Mrs. Bienstock stating that MGM had to *"withdraw"* its offer of employment. This was despite the fact that I had already accepted MGM's job offer in writing, and MGM had already acknowledged my acceptance.

In the May 22, 2016 e-mail, Mrs. Bienstock stated that the "withdrawal" of the offer of employment was *"due to incompletion of the background check."* However, it is clear that this explanation was nothing more than a pre-text. MGM had previously been informed that it would take 4 – 6 weeks to obtain my college records and voiced no concern. Indeed, Faye Bienstock congratulated me on accepting the job offer knowing that it would take 4 – 6 weeks to obtain the records. When the offer was "withdrawn" on May 22, 2016, it was still nine (9) days prior to the date that I originally informed MGM that I would be starting.

After I received the May 22, 2016 e-mail, I obtained all of the requested college records myself without any problems. Upon learning that the position was still open, I informed MGM that I had obtained the records and that I wanted to move forward with the Vice President of Sales and Marketing position. Although the position was still open, Faye Bienstock responded that MGM was considering other candidates.

My status as a married gay male has no negative impact whatsoever on my ability to perform my job. I performed essentially the same job with my former employer with no negative consequences.

III.     I was discriminated against on the basis of sex, sexual orientation, and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991.

MGM terminated my employment after I accepted their job offer in writing because Judah and Faye Bienstock learned that I am gay and married to a male partner. Under Title VII, it is unlawful for a covered employer such as MGM to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion [or] sex." 42 U.S.C. 2000e-2(a)(1). Discrimination based on sexual orientation is necessarily discrimination based on sex. *Baldwin v. Foxx*, EEOC DOC 0120133080, 2015 WL 4397641 (July 16, 2015). Claims of discrimination based on sexual orientation implicitly state a claim of sex discrimination under Title VII. 2015 WL 4397641, at *10. ("[S]exual orientation is inherently a 'sex-based consideration,' and an allegation of

{M0452984.3}

discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII. . . Sexual orientation discrimination is sex discrimination because it necessarily entails treating an employee less favorably because of the employee's sex") *Id.* at *5. The EEOC's decision in *Baldwin* comes on the heels of the Supreme Court's landmark decision in *Obergefell v. Hodges*, 135 S. Ct. 2584, 2608 (2015), granting same-sex couples like me the right to marry under the Fourteenth Amendment.

MGM also discriminated against me on the basis of my sex because it treated me differently for associating with a person of a certain sex (the same sex as me). The fact that I am a man who is married to a man, instead of a man married to a woman, motivated MGM's discrimination and its decision to terminate my employment after I accepted my written job offer. *See, e.g., Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ("[A]n employer may violate Title VII if it takes action against an employee because of the employee's association with a person of another race."). *See also Price Waterhouse*, 490 U.S. at 243 n. 9 (Title VII treats each protected category equally – race, color, religion, sex, and national origin).

MGM further discriminated against me on the basis of gender stereotypes. *See Price Waterhouse*, 490 U.S. at 251 (Title VII "strike[s] at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.") I am a gay male whose sexual orientation is not consistent with MGM's perception of acceptable gender roles, and my orientation as being gay removes me from MGM's preconceived definition of "male." My inconsistency with MGM's perceptions of acceptable gender roles and preconceived definitions of "male" motivated its discrimination against me and caused MGM to terminate my employment after I had accepted their written job offer. *See Terveer v. Billington*, 34 F. Supp. 3d 100, 116 (D.D.C. 2014) (motion to dismiss Title VII claim denied where homosexual male alleged that because he was gay, he did not conform with male sex stereotypes, and was denied promotions for that reason).

In addition to discrimination on the basis of sex, MGM also discriminated against me because I failed to live up to MGM's religious expectations. *See Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997) (A Title VII claim for religious discrimination is stated when plaintiff's perceived religious shortcomings played a motivating role in adverse employment decision). Because I am gay, my status as such does not conform to the religious beliefs or expectations of MGM's principals and/or management. After learning of my nonconforming status, MGM terminate my employment after I had accepted their written job offer because I do not share or follow their same religious beliefs. *See Terveer*, 34 F. Supp. 3d at 117-18 (Title VII claim for religious discrimination stated when homosexual male alleged that his status as such did not conform to his employer's religious belief and he was targeted for that reason).

For all of the above reasons, I believe that the actions by MGM were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991.

RECEIVED
EEOC
ST LOUIS DISTRICT

2016 DEC 13 AM 9: 27

{M0452984.3}

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Mark Horton**
**8452 Foehrkolb Ln**
**Edwardsville, IL 62025**

From:  **St. Louis District Office**
**1222 Spruce Street**
**Room 8.100**
**Saint Louis, MO 63103**

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **560-2017-00407** | **Patrick E. Hollis,** <br> **Investigator** | **(314) 539-7905** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | |
|---|---|
| [X] | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| | |
|---|---|
| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

AUG 2 3 2017

Enclosures(s)

**James R. Neely, Jr.,**
**Director**

*(Date Mailed)*

cc:
Michael Winter, Manager
**MIDWEST GERIATRIC MANAGEMENT, LLC**
477 N. Lindbergh Blvd
Creve Coeur, MO 63141

Philip MacKey, Esq.
**LEWIS RICE, LLC**
600 Washington Avenue
Saint Louis, MO 63101

Mark S. Schuver
**MATHIS MARIFIAN & RICHTER, LTD.**
23 Public Square, Ste. 300
PO Box 307
Belleville, IL 62222

**EXHIBIT**

tabbies

**2**


**HEALTHCARE**
*empowering better living.*

April 21, 2016

Mark Horton

Dear Mark:

We are pleased to offer you the position of VP of Sales and Marketing at MGM Healthcare. This letter confirms an offer of employment with MGM Healthcare.

Your initial salary for this position will be $150,000 upon hire.
Upon successful completion of approved 90 day plan, annual salary will be increased to $165,000.

This offer is also contingent upon successful completion of background checks and references.

In addition, you are eligible for the following:
- PTO accrual based on Handbook
- Paid holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day
- Medical, Dental, Vision, and Life are available for purchase
- Up to $40/month cell phone reimbursement
- Expenses will be reimbursed per travel policy

We look forward to developing our relationship with you and hope you view this opportunity as a chance to have a long term positive impact on our business. Nonetheless, please understand that MGM Healthcare is an at-will employer. That means that either you or MGM are free to end the employment relationship at any time, with or without notice or cause.

We are excited about the opportunity to work with you in this capacity and welcome you to the MGM Team. If you have any questions, please feel free to contact me at 314 631-3000. Please acknowledge your acceptance of this position by signing below and returning.

Sincerely,

Judah and Faye Bienstock

ACCEPTED: _Mark Horton_ DATE: _5 / 4 / 2016_
(Mark Horton)

**EXHIBIT**

**3**