UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-2324 |
| | ) | |
| MIDWEST GERIATRIC MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MGM'S MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I. **INTRODUCTION**

Plaintiff Mark Horton ("Plaintiff") attempts to assert three claims against Defendant Midwest Geriatric Management, LLC ("MGM" or "Defendant") based upon MGM's withdrawal of a contingent offer of future at-will employment after Plaintiff failed to complete a background check regarding his education. As to Counts I and II, Plaintiff alleges that MGM violated Title VII because, according to Plaintiff, MGM withdrew the job offer upon learning of Plaintiff's sexual orientation. However, accepting these allegations as true (they are not), Counts I and II fail to state a claim because under controlling Eighth Circuit precedent, sexual orientation is not protected by Title VII. As to Count III, Plaintiff alleges that MGM fraudulently induced him into resigning from another job based upon MGM's purported implication that he had four-to-six weeks within which to provide his education records. However, the job offered by MGM to Plaintiff was an at-will position; as a result, Plaintiff cannot state a claim of fraudulent inducement as a matter of law.

Accordingly, and for the reasons discussed further below, each of Plaintiff's claims (Counts I-III) should be dismissed, with prejudice.

2239901.1

II.     **BACKGROUND**

Plaintiff alleges that in February of 2016, while employed by Celtic Healthcare ("Celtic"), he received an e-mail from a headhunter, Jobplex, regarding a Vice President of Sales and Marketing position with MGM. (Complaint, ¶¶ 9, 11.) Plaintiff further alleges that on April 22, 2016, he was offered the position with MGM and that he accepted the offer on May 4, 2016, though that offer was contingent on completion of a background check.[1] (*Id.*, ¶¶ 16-17, 25.) Plaintiff alleges that he was informed that the third-party company engaged to complete the background check, HireRight, was having difficulty verifying his education; that he told MGM that it might take four-to-six weeks to obtain records; and that he and MGM thereafter corresponded about his anticipated start date. (*Id.*, ¶¶ 18-25, 27-34.) Plaintiff alleges that in reliance upon the job offer he had accepted and MGM's confirmation of his acceptance, he resigned from his employment with Celtic. (*Id.*, ¶ 26.)

Plaintiff further alleges that in a May 17, 2016 e-mail updating MGM on the status of obtaining his educational records, he made a passing comment that: "My partner has been on me about [my MBA] since he competed his PHD a while back." (*Id.*, ¶ 35.) Plaintiff alleges that on May 20, 2016, MGM asked to speak with him about the status of his employment and that on May 22, 2016, MGM withdrew its offer of employment "due to the incompletion of the background check of supportive documentation." (*Id.*, ¶¶ 38, 41.) Plaintiff alleges that he later obtained the education records, and that on June 21, 2016, he inquired about moving forward with the position, but was told that MGM was considering other candidates at that time. (*Id.* ¶¶ 43-45.)

---

[1] The job offer Plaintiff claims he accepted is attached to the Complaint and states, *inter alia*, "This offer is [] contingent upon successful completion of background checks and references" and "please understand that MGM Healthcare is an at-will employer. That means that either you or MGM are free to end the employment relationship at any time, with or without notice or cause." (*Id.*, at Ex. 3.)

Based on these allegations, Plaintiff attempts to assert three claims. In Count I, Plaintiff alleges a violation of Title VII based upon Plaintiff's sexual orientation, which Plaintiff contends equates to "sex" under Title VII in as much as Plaintiff was in a relationship with another male. (*Id.*, ¶¶ 46-61.) In Count II, Plaintiff alleges another violation of Title VII based upon Plaintiff's sexual orientation, which Plaintiff contends equates to "religious discrimination" under Title VII because he held religious beliefs that permitted him to be in a homosexual marriage and relationship. (*Id.*, ¶¶ 62-76.) In Count III, Plaintiff alleges a state law claim of fraudulent inducement based upon MGM's alleged failure to object to Plaintiff's proposed four-to-six week timeline for obtaining his educational records. (*Id.*, ¶ 77-90.)

### III. ARGUMENT

#### A. Motion to Dismiss Standard.

This Court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) when the allegations of the Complaint do not state a claim to relief that is plausible on its face. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). When it is clear from the facts of the Complaint that there is some insuperable bar to relief, a court should grant a Rule 12(b)(6) motion. *Krentz v. Robinson*, 228 F.3d 897, 905 (8th Cir. 2000).

#### B. Counts I and II Should Be Dismissed Because under Controlling Eighth Circuit Law, Sexual Orientation Is Not Protected under Title VII.

At core, both Counts I and II allege a violation of Title VII based upon Plaintiff's sexual orientation. However, it is well settled under controlling Eighth Circuit precedent that sexual orientation is not protected under Title VII. Indeed, in *Williamson v. A.G. Edwards & Sons, Inc.,* the Eighth Circuit expressly held: "Title VII does not prohibit discrimination against homosexuals." 876 F.2d 69, 70 (8th Cir. 1989) (per curiam).

3

Relying on *Williamson*, this Court has found dismissal appropriate where claims brought under Title VII relied upon allegations of discrimination based upon sexual orientation. In *Johnson v. Shinseki*, the plaintiff alleged that her former employer discriminated against her in violation of Title VII "on the basis of her sexual orientation, when it promoted someone else over her." Case No. 1:12-CV-00187SNLJ, 2013 WL 1987352, at *1 (E.D. Mo. May 13, 2013). Specifically, the plaintiff alleged that "she was not promoted because she [was] a lesbian." *Id.* The former employer moved to dismiss, contending that sexual orientation is not protected under Title VII and that the plaintiff's failure-to-promote claim necessarily failed as a matter of law. *Id.* at *1-2. In granting the former employer's motion to dismiss, the Court recognized that "Title VII does not mention 'sexual orientation,' and the Eighth Circuit has held that 'Title VII does not prohibit discrimination against homosexuals.'" *Id.* at *2 (quoting *Williamson*, 876 F.2d at 70)). The Court further observed that "Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation" and that "[i]t is thus clear that non-harassment, discrimination claims may not be made on the basis of sexual orientation[.]"[2] *Id.* (citations omitted); *see also Logan v. Chertoff*, No. 4:07-CV-1948 CAS, 2009 WL 3064882, at *1, n.3 (E.D. Mo. Sept. 22, 2009) (granting motion to dismiss plaintiff's Title VII claim alleging "that he was being discriminated against on the basis of his 'perceived sexual orientation'" because "[that] is not a protected class under Title VII"), *aff'd sub nom.* 376 F. App'x 660 (8th Cir. 2010).

*Johnson* and *Logan* are not outliers. Other district courts in the Eighth Circuit have consistently dismissed Title VII claims alleging discrimination based upon sexual orientation. *See, e.g., Bland v. Burwell,* No. 14-0226-CV-W-ODS, 2016 WL 110597, at *1 (W.D. Mo. Jan. 8, 2016)

---

[2] Because Plaintiff does not (and could not) allege harassment on the basis of sexual orientation, the issue of whether or not a Title VII claim would exist under such circumstances is irrelevant in this case.

("Sexual orientation is not a protected class under Title VII."); *Pambianchi v. Arkansas Tech Univ.,* No. 4:13-CV-00046-KGB, 2014 WL 11498236, at *4 (E.D. Ark. Mar. 14, 2014) ("Although gender is a protected class under Title VII, Title VII does not prohibit employment discrimination on the basis of sexual orientation."); *Robertson v. Siouxland Cmty. Health Ctr.,* 938 F. Supp. 2d 831, 841 (N.D. Iowa 2013) ("Although courts have recognized that gender stereotyping can violate Title VII when it influences employment decisions and the Supreme Court has recognized that Title VII may protect against same-sex harassment, if it is shown to be because of sex, the Eighth Circuit Court of Appeals, like other courts, has concluded that Title VII does not prohibit discrimination against homosexuals." (internal citations, quotation marks, and alterations omitted)); *Harmon v. Dep't of Veterans Affairs,* No. 4:06CV1674SWW, 2008 WL 495876, at *2 (E.D. Ark. Feb. 20, 2008) ("Although gender is a protected class, Title VII does not prohibit employment discrimination on the basis of sexual orientation."), *aff'd,* 301 F. App'x 569 (8th Cir. 2008); *Klein v. McGowan*, 36 F. Supp. 2d 885, 889 (D. Minn. 1999) ("[I]t is well settled that Title VII does not recognize a cause of action for discrimination based on sexual orientation."), *aff'd,* 198 F.3d 705 (8th Cir. 1999); *Kelley v. Vaughn,* 760 F. Supp. 161, 163 (W.D. Mo. 1991) ("Because homosexuality pertains to sexual preference, and not to gender, [T]itle VII does not prohibit discrimination against homosexuals." (internal quotation marks and citations omitted)).[3]

---

[3] Though a divided Seventh Circuit Court of Appeals recently held that Title VII could include sexual orientation as a protected classification, *see Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339 (7th Cir. 2017) (*en banc*), that decision is contrary to the law of the Eighth Circuit and its sister courts. *See, e.g.*, *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1256-57 (11th Cir. 2017) (affirming dismissal of Title VII sexual orientation discrimination claim and observing, "other circuits have held that sexual orientation discrimination is not actionable under Title VII" (collecting cases)); *see also Captiva Lake Invs., LLC v. Fid. Nat'l Title Ins. Co.,* No. 4:10-CV-1890 (CEJ), 2016 WL 2587295, at *1 (E.D. Mo. Mar. 7, 2016) ("This Court is, of course, bound to follow Eighth Circuit precedent." (collecting cases)). If *Williamson* were to be reconsidered, it would require the entire Eighth Circuit, sitting *en banc*, to do so (just as *Hively* required the entire Seventh Circuit, sitting *en banc*, to overturn that court's prior decisions). *See, e.g.*, *Bressman v.*

1. *Count I further fails to state a claim because Title VII's prohibition on "sex" discrimination does not extend to sexual orientation.*

In Count I, Plaintiff specifically attempts to fit his allegation of sexual orientation discrimination within the ambit of Title VII's prohibition on discrimination based upon "sex." (*See, e.g.,* Complaint, ¶ 48 (alleging that MGM withdrew its offer of employment "after learning of Plaintiff's homosexual relationship"), ¶ 48(a) (alleging that MGM "treated Plaintiff less favorably because of his sexual orientation, which is necessarily discrimination based on sex").)

Courts in the Eighth Circuit, following and consistent with *Williamson*, have specifically rejected the theory that "sex" includes "sexual orientation." *See, e.g.*, *Robertson*, 938 F. Supp. 2d at 841 (dismissing Title VII "sex" discrimination claim based on sexual orientation because "Title VII has not been construed to permit [a sex discrimination claim based on sexual orientation]"); *Harmon*, 2008 WL 495876, at *2-3 (dismissing Title VII "sex" discrimination claim because "[a]lthough gender is a protected class, Title VII does not prohibit employment discrimination on the basis of sexual orientation" (collecting cases)); *Klein*, 36 F. Supp. 2d at 890 (rejecting attempt to "equate the sexual aspect of [the] [p]laintiff's personality with [the] [p]laintiff's sex for purposes of Title VII"); *Kelley*, 760 F. Supp. at 163 (rejecting Title VII "sex" discrimination claim based on sexual orientation because "homosexuality pertains to sexual preference, and not to gender" and "[t]itle VII does not prohibit discrimination against homosexuals" (citation omitted)).

Accordingly, Plaintiff's allegations in Count I of "sex" discrimination based upon his sexual orientation fail to state a claim as a matter of law. Count I should be dismissed, with prejudice.

---

*Farrier*, 900 F.2d 1305, 1318 (8th Cir. 1990) ("Until *en banc* review, we must adhere to our first decided case, consistent with the rule that no panel can overturn a previous panel decision."). As a result, an extended discussion of *Hively* is unnecessary (and irrelevant) at this point.

2. *Plaintiff's associational and sex stereotyping theories of "sex" discrimination in Count I similarly fail to state a claim as a matter of law.*

Plaintiff also alleges in Count I that MGM "treated Plaintiff less favorably because of his association with a person of a particular sex; *i.e.*, his male partner, who is of the same sex as Plaintiff" (*id.*, ¶ 48(b); *accord* ¶ 50), and that MGM "treated Plaintiff less favorably on the basis of his nonconformity with sex stereotypes and MGM's preconceived definition of how males should behave" (*id.*, ¶ 48(c); *accord* ¶ 52). These allegations fail to state a cognizable claim.[4]

      i.      <u>Plaintiff's associational theory of "sex" discrimination is a circular argument that fails to state a claim as a matter of law.</u>

Plaintiff's apparent contention—that although his own sexual orientation is not actionable under Title VII, his association with someone of his same gender is—is an entirely circular argument. Again, Plaintiff's sexual orientation is not protected (as "sex" or "sexual orientation") under Title VII. *See, e.g.*, *Williamson,* 876 F.2d at 70 ("Title VII does not prohibit discrimination against homosexuals."). It necessarily stands to reason that the sex or sexual orientation of someone with whom Plaintiff associates cannot bring Plaintiff's own otherwise unprotected sexual orientation within the ambit of Title VII.[5]

---

[4] In addition to substantively failing to state a claim as a matter of law, these allegations are otherwise conclusory statements which fail to satisfy Fed. R. Civ. P. 8. *See, e.g.*, *Phipps v. Hous. Auth. of New Orleans,* No. CA 15-3296, 2016 WL 164916, at *5 (E.D. La. Jan. 13, 2016), *appeal dismissed* (Apr. 21, 2016) (holding that the plaintiff's allegation that "as a bisexual male, he associated with other males in his private life" failed to satisfy Rule 8 to state a Title VII claim).

[5] Based on his EEOC Charge, it appears that Plaintiff relies on decisions holding that Title VII protects employees in interracial relationships. (Complaint, Ex. 1, p. 3.) As the Eighth Circuit recognized in *Tovar v. Essentia Health*, such decisions "rest on the conclusion that the discrimination challenged . . . was based on an employee's own protected characteristic, even if the significance of that characteristic was defined in relation to the characteristics of a third party." 857 F.3d 771, 776 (8th Cir. 2017). Here, Plaintiff's sexual orientation is not a "protected characteristic" and his sex (male) is not "defined in relation to the characteristics of a third party."

ii. Plaintiff's sex stereotyping theory of "sex" discrimination similarly fails to state a claim as a matter of law.

"Courts have routinely rejected attempts to use a sex-stereotyping theory to bring under Title VII what is in essence a claim for discrimination on the basis of sexual orientation."[6] *Pambianchi*, 2014 WL 11498236, at *5 (colleting cases). For example, in *Pambianchi*, the plaintiff alleged, among other things, discrimination based upon her sexual orientation, which the plaintiff "attempt[ed] . . . to fit . . . under the theory of sex or gender stereotyping[.]" *Id.* at *1-3, *4. After an extensive review of existing case law, the court recognized the distinction some courts have drawn between actionable discriminatory stereotyping (based on stereotypical notions of femininity and masculinity) and non-actionable discrimination based solely on sexual orientation. *Id.* at *5. There, as here, the plaintiff based her allegations <u>entirely</u> on sexual orientation, which the court recognized "alone cannot be the alleged gender non-conforming behavior that gives rise to an actionable Title VII claim under a sex-serotyping theory." *Id.* Accordingly, the court dismissed the plaintiff's sexual orientation-based discrimination claim. *Id.* at *5-6.

Moreover, Plaintiff's sexual orientation sex-stereotyping allegation is inherently inconsistent with Plaintiff's allegations as a whole. Plaintiff alleges that he was offered (and accepted) the job after applying and interviewing, and that soon after he disclosed his sexual orientation to MGM, the offer was withdrawn. (Complaint, ¶¶ 13, 16, 24, 35, 41.) Plaintiff does not, and necessarily cannot, allege discrimination based on "gender non-conforming behavior and appearance"; the <u>only</u> alleged fact upon which Plaintiff bases his discrimination claim between the job offer and withdraw is his alleged disclosure of his sexual orientation.

---

[6] While "an otherwise viable claim under a sex-stereotyping theory is not rendered invalid simply because the harassment or alleged harassment includes taunts of homosexuality," *see Pambianchi*, 2014 WL 11498236, at *5, here, Plaintiff's allegations are unmistakably based solely upon his sexual orientation. (*See, e.g.*, Complaint, ¶¶ 48, 48(a), 48(c), 52.)

Simply put, Plaintiff's sex stereotyping claim is <u>entirely</u> based on his sexual orientation—not Plaintiff's personal characteristics relative to stereotypical norms. *Compare Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989) (holding that stereotypical attitudes that the female plaintiff was "macho," in need of "a course at charm school," and that she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry" would violate Title VII if they caused an adverse employment action) *with Pambianchi*, 2014 WL 11498236, at *4-5 (holding that allegations of sexual orientation-based sex-stereotyping, such as being referred to as an "immoral lesbian," failed to state a Title VII sex-stereotyping claim); *see also Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006) (explaining that "cases applying *Price Waterhouse* have interpreted it as applying where gender non-conformance is <u>demonstrable through the plaintiff's appearance or behavior</u>" (emphasis added) (collecting cases)); *Bland*, 2016 WL 110597, at *1-2 (dismissing Title VII "sex" discrimination claim based only on "allegations as to why [plaintiff] was discriminated based on his sexual orientation" because "[s]exual orientation is not a protected class under Title VII" and thus the plaintiff "summarily stating . . . that he was discriminated against 'on the basis of his race, sex and perceived sexual orientation' [was] insufficient" to state a claim) (citations omitted).

In short, Count I clearly and *solely* alleges discrimination based upon sexual orientation. Under controlling Eighth Circuit precedent, as this Court and other district courts within the Eighth Circuit have consistently held, such a claim is not viable under Title VII. As a result, Count I should be dismissed in its entirety, with prejudice.

       3.    *Count II further fails to state a claim as a matter of law because although it purports to allege "religious discrimination," it is based solely on sexual orientation, which is not protected by Title VII.*

In Count II, Plaintiff alleges religious discrimination under Title VII based solely upon the allegation that "Plaintiff did not share [MGM's] religious beliefs, and in fact held different beliefs

9

which permitted him to be in a homosexual marriage and relationship." (Complaint, ¶ 64.) In other words, Count II is an attempted re-packaging of Plaintiff's core allegation of discrimination under Title VII based upon sexual orientation. Again, under controlling Eighth Circuit precedent, this claim necessarily fails. *See Williamson*, 876 F.2d at 70 ("Title VII does not prohibit discrimination against homosexuals.").

Moreover, consistent with *Williamson*, other courts have rejected similar attempts to re-package a sexual orientation-based discrimination claim into a religious discrimination claim. *See, e.g.*, *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 293 (3d Cir. 2009) ("[The plaintiff's] identification of this single 'religious' belief leads ineluctably to the conclusion that he was harassed not 'because of religion,' but because of his sexual orientation. Given Congress's repeated rejection of legislation that would have extended Title VII to cover sexual orientation, we cannot accept [the plaintiff's] *de facto* invitation to hold that he was discriminated against 'because of religion' merely by virtue of his homosexuality.") (internal citation omitted); *Burrows v. Coll. of Cent. Florida,* No. 5:14-CV-197-OC-30PRL, 2014 WL 7224533, at *3-4 (M.D. Fla. Dec. 17, 2014) (granting motion to dismiss Title VII religious discrimination claim where the plaintiff's "claim for religious discrimination [was] based solely on [the] [d]efendant's alleged religious disapproval of her sexual orientation" because "courts . . . across the country have consistently held that Title VII does not apply to discrimination claims based on sexual orientation" (collecting cases)).

Count II is merely a re-packaging of Plaintiff's primary sexual orientation discrimination claim, as reflected by the lack of any supporting allegations regarding purported religious discrimination. For example, nowhere does Plaintiff allege his religion or that he ever informed MGM of his religion. This, alone, is fatal to Plaintiff's Count II. *See, e.g.*, *Pedreira v. Ky. Baptist*

*Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal of Title VII religious discrimination claim where the plaintiff failed to allege "any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion.").

Moreover, to the extent Count II is based on religion, it appears that Plaintiff relies on MGM President and CEO's and his wife's alleged religious beliefs—not his own. (Complaint, ¶¶ 13-15, 64-65.) This is not a basis upon which to assert a Title VII claim. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of <u>such individual's</u> race, color, religion, sex, or national origin." (emphasis added); *Tovar*, 857 F.3d at 775-76 (holding that Title VII claim alleging discrimination based upon the plaintiff's son's sex failed because the plaintiff was not "within the class of persons for whom Congress authorized that [Title VII] cause of action").

In sum, similar to Count I, Count II is unquestionably premised only on alleged discrimination based on sexual orientation. Plaintiff's attempt to re-package this allegation into a religious discrimination claim should be rejected, consistent with *Williamson* and numerous other decisions. Count II should be dismissed, with prejudice.

> C. <u>Count III Should Be Dismissed Because the Proposed Employment was At-Will and Thus There Could Be No Reliance as a Matter of Law</u>.

In Count III, Plaintiff contends that MGM fraudulently induced him into resigning from his then-current employment with Celtic in favor of a job with MGM by not objecting to a four-to-six week delay in Plaintiff obtaining his educational records but later withdrawing the job offer due to the incompletion of Plaintiff's background check. (Complaint, ¶¶ 78-80.) This claim fails as a matter of law because, among other reasons, the job offer was for employment at-will, which necessarily precludes any reasonable reliance by Plaintiff. *See generally Harvey v. CitiMortgage,*

*Inc.*, No. 4:10CV551 TIA, 2011 WL 1226973, at *5 (E.D. Mo. Mar. 29, 2011) (listing elements of fraudulent inducement claim, which include both "the hearer's reliance on [the statement's] truth" and "the hearer's right to rely thereon").

The contingent offer upon which Plaintiff attempts to rely expressly stated: "[P]lease understand that MGM Healthcare is an at-will employer. That means that either you or MGM are free to end the employment relationship at any time, with or without notice or cause." (Complaint, Ex. 3.) Because MGM was "free to end the employment relationship at any time, with or without notice or cause," Plaintiff could not, as a matter of law, reasonably rely on any supposed implication that the offer would not withdrawn for issues relating to Plaintiff passing his background check.[7] *See, e.g.*, *Deschler v. Brown & Williamson Tobacco Co.*, 797 F.2d 695, 696 (8th Cir. 1986) (affirming district court's holding that the at-will nature of the plaintiff's employment "fundamentally undermine[d] [his] claim of fraud in the inducement"); *Franklin v. Pinnacle Entm't, Inc.*, 1 F. Supp. 3d 979, 988-90 (E.D. Mo. 2014) (dismissing plaintiffs' negligent misrepresentation claims because the at-will employment doctrine in Missouri "bar[s] claims asserting detrimental reliance on promises of future at-will employment") (collecting cases); *Faust v. Ryder Comm. Leasing & Servs.*, 954 S.W.2d 383, 394 (Mo. Ct. App. W.D. 1997) ("Thus, as a matter of law, claims of intentional and negligent misrepresentation, which are predicated on reliance, will not lie where the reliance is based on a promise to hire as an employee

---

[7] Count III further fails to state a claim because Plaintiff does not identify any supposed actionable representation by MGM. Plaintiff's theory seems to be that MGM was obligated to object to his statement that it would take four-to-six weeks for him to obtain his educational records in completing his background check. (Complaint, ¶ 80.) Plaintiff, however, pleads no facts that would support the imposition of such a duty to object, particularly given that Plaintiff knew that MGM could withdraw the offer of at-will employment "at any time, with or without notice or cause." *See, e.g.*, *Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2011 WL 4501049, at *8 (E.D. Mo. Sept. 28, 2011); (Complaint, Ex. 3.)

at-will."), *abrogated on other grounds by Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81 (Mo. banc 2010); *Alfano v. AAIM Mgmt. Ass'n*, 770 S.W.2d 743, 745 (Mo. Ct. App. 1989) ("Under Missouri law, a plaintiff who is offered employment as an employee-at-will does not have a cause of action against the offeror for withdrawing the offer or firing him despite his reliance on the offer.") (citing *Rosatone v. GTE Sprint Commc'ns*, 761 S.W.2d 670, 672 (Mo. Ct. App. 1988) (affirming ); *see also Guido v. Orange Reg'l Med. Ctr.*, 958 N.Y.S.2d 195, 199 (N.Y. App. 2013) ("Where, as here, a plaintiff is offered only at-will employment, he or she will generally be unable to establish reasonable reliance on a prospective employer's representations . . . . The at-will employment doctrine thus bars a cause of action sounding in fraudulent inducement, even where the circumstances pertain to a plaintiff's acceptance of an offer of a position rather than his or her termination." (internal quotation marks and citations omitted)).[8]

As such, Plaintiff cannot state a fraudulent inducement claim as a matter of law. Count III should be dismissed, with prejudice.[9]

---

[8] Though the court in *Gardner v. Victory Land Grp., Inc.*, Case No. 08-03170-CV-S-JTM, 2010 WL 11508742, at *1-4 (W.D. Mo. Mar. 18, 2010), recognized the viability of a fraudulent inducement claim where an at-will employee was allegedly promised but later not paid commissions, here Plaintiff is not alleging underpayment of promised wages based upon work performed but instead challenges the withdrawal of an offer of at-will employment. *Gardner* is inapposite to the instant case.

[9] To the extent Count III is somehow legally cognizable, it nonetheless fails to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). *See, e.g., Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 822 (E.D. Mo. 2013) (holding that Rule 9(b)'s pleading standards apply to fraudulent inducement claim). Among other things, Plaintiff fails to plead: (i) when and how he "investigated the issue" regarding HireRight's "hard time verifying Plaintiff's education with two colleges"; (ii) when, how, and to whom he "conveyed [the anticipated four-to-six week delay] to Jobplex, HireRight and Defendant MGM"; and (iii) when and how he "successfully obtained the requested college records himself without any issues" and whether he ever actually provided them to HireRight or MGM. (Complaint, ¶¶ 20, 22, 43.)

IV. **CONCLUSION**

For all of the reasons set forth herein, MGM respectfully requests that Plaintiff's Complaint be dismissed, with prejudice, and for such other relief to MGM as may be appropriate and just.

Dated: September 26, 2017

Respectfully submitted,

/s/ Philip J. Mackey
Philip J. Mackey, 48630MO
Michael L. Jente, 62980MO
LEWIS RICE LLC
600 Washington Ave., Ste. 2500
St. Louis, Missouri 63101-1311
Telephone: 314.444.1343
Facsimile: 314.612.1343
E-mail: pmackey@lewisrice.com
mjente@lewisrice.com

*Attorneys for Defendant Midwest Geriatric Management, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that, on September 26, 2017, a true and correct copy of the foregoing was served via the Court's electronic filing system upon all counsel of record, pursuant to the Court's Local Rules.

                                                /s/ Philip J. Mackey