IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| MARK HORTON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | Case No. 14:17-CV-2324 |
| v. | ) ) | |
| MIDWEST GERIATRIC MANAGEMENT, LLC, | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I. INTRODUCTION

Defendant, Midwest Geriatric Management, LLC, attempts to sidestep Plaintiff's serious accusations of discrimination in violation of Title VII by citing carefully selected quotations from outdated case law inconsistent with recent Supreme Court rulings. This memorandum provides much-needed context for those selective quotations, as well as context for this Court's task of statutory interpretation consistent with the current legal landscape regarding the protection of homosexual individuals under Title VII. In addition, this memorandum explains why Plaintiff has stated a claim for fraudulent inducement under Missouri law, supplementing Defendant's incomplete depiction of the relevant case law governing Plaintiff's claim.

### II. ARGUMENT

#### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged. *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1110 (8th Cir. 2017). Courts review the plausibility of the plaintiff's claim as a whole, and not the plausibility of each individual allegation. *Id.*

Dismissal is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015 (citing *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009)). In deciding a motion to dismiss, the court assumes all factual allegations in the pleadings are true and interprets them in the light most favorable to the nonmoving party. *Wolfchild v. Redwood Cty.*, 824 F.3d 761, 767 (8th Cir. 2016).

### B. Counts I and II Must Stand Because They State Cognizable Claims for Discrimination under Title VII Based on Plaintiff's Sex and His Failure to Conform to the Religious Beliefs of Judah and Faye Bienstock.

Defendant argues that Counts I and II of Plaintiff's Complaint must be dismissed because sexual orientation is not protected under Title VII, citing *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989). The crux of Defendant's argument is that this Court is bound by the holding in *Williamson*, and must dismiss this case pursuant to the doctrine of *stare decisis*. However, Defendant fails to take into account that *Williamson* was decided almost 30 years ago, and has since been affected by several Supreme Court decisions – decisions which have caused the Seventh Circuit to recently overturn its own precedent on this very same issue in order to bring its jurisprudence into conformity with the Supreme Court's rulings. *See Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 343 (7th Cir. 2017).

Furthermore, Defendant cites to a dissenting opinion in *Bressman v. Farrier*, 900 F.2d 1305, 1318 (8th Cir. 1990), for the proposition that this Court is bound by *Williamson* until the Eighth Circuit *en banc* overturns it. Contrary to Defendant's argument, however, that dissenting

justice *actually* argued that he was <u>not</u> bound by a prior Eighth Circuit decision (*Offet v. Solem*, 823 F.2d 1256 (8th Cir. 1987)) in deciding the case before him because *Offet* was wrongly decided and inconsistent with Supreme Court decisions. *Bressman v. Farrier*, 900 F.2d at 1318.

As acknowledged in *Bressman*, this Court's most basic obligation is to construe the statute at hand in accordance with Supreme Court holdings, despite circuit precedent that does not recognize and resolve tension therewith. *See EEOC v. Scott Medical Health Center*, 2016 WL 6569233 (W.D. Pa. Nov. 4, 2016) (declining to follow Third Circuit precedent regarding actions for discrimination against homosexual individuals under Title VII, stating "The Supreme Court's decision in *Price Waterhouse [v. Hopkins*, 490 U.S. 228 (1989)] informs and controls the instant analysis."). *See also Johns v. Redeker*, 406 F.2d 878, 882 (8th Cir. 1969) ("Of course an obvious error need not be perpetuated by strict adherence to a court's earlier decisions."). In this case, the obligation to defer to the Supreme Court's precedent compels the conclusion that Defendant's Motion to Dismiss must be denied.

1. <u>Title VII's prohibition on sex discrimination extends to sexual orientation.</u>

The Supreme Court has issued a series of opinions relevant to the issue of whether discrimination on the basis of sex includes discrimination based on an individual's sexual orientation. The most notable are *Loving v. Virginia*, 388 U.S. 1 (1967), *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), and, most recently, *Obergefell v. Hodges*, --- U.S. ---, 135 S. Ct. 2584 (2015). All of these decisions call *Williamson's* validity into question.

      a. *Principles Set Forth by the Supreme Court Direct this Court's Interpretation of Title VII.*

First, the Supreme Court's decision in *Oncale* guides this Court's task of statutory interpretation in determining whether discrimination on the basis of one's sexual orientation is

discrimination because of sex. In ruling that Title VII covers sexual harassment inflicted by a man on a male victim, Justice Scalia acknowledged that while same-sex harassment likely was not contemplated by Congress when enacting Title VII, it was nonetheless covered under the "because of sex" provision. *Oncale*, 523 U.S. at 79. Justice Scalia aptly stated, "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Id.*

Like the *Oncale* employer, the Defendant here attempts to read the mind of Congress to persuade this Court of Title VII's meaning, and makes much of the fact that Congress has rejected legislation that would insert the words "sexual orientation" into Title VII's text. However, such inaction could mean almost anything, including the lack of necessity for the change because the law already does what the proposed legislation seeks to achieve. For this reason, the Supreme Court has questioned the value of reliance on congressional inaction. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 186 (1994) ("It does not follow that Congress' failure to overturn a statutory precedent is reason for this Court to adhere to it. It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the courts' statutory interpretation."). As shown below, the Supreme Court's interpretation of Title VII in the years since its enactment indicates that Title VII includes homosexuality as part of its prohibition on sex discrimination.

      b.     *Defendant treated Plaintiff less favorably on the basis of his nonconformity with sex stereotypes.*

In *Price Waterhouse*, a plurality of the Supreme Court ruled that the plaintiff's employer discriminated against her because she was too masculine. *Price Waterhouse*, 490 U.S. at 255. Among other things, the plaintiff's employer indicated that to improve her chances for

partnership, the plaintiff should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235. The Supreme Court ruled that Title VII protected the plaintiff, stating:

> We are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.

*Id.* at 251. Here, Plaintiff has alleged that Defendant discriminated against him because he failed to conform with the male sex stereotype. Such a claim is cognizable under Title VII pursuant to *Price Waterhouse*.

In an attempt to distinguish *Price Waterhouse* from the instant case, Defendant states that Plaintiff has based his allegations "entirely on sexual orientation," and has not alleged any "gender non-conforming behavior." Even the case Defendant cites for this proposition, however, acknowledges "the difficulty in drawing a line between sex stereotypes and notions of heterosexuality and homosexuality." *Pambianchi v. Arkansas Tech Univ.*, No. 4:13-CV-00046-KGB, 2014 WL 11498236, at *5 (E.D. Ark. Mar. 14, 2014). The *Hively* court recently went so far as to describe the distinction as non-existent, stating that the homosexual plaintiff in that case "represent[ed] the ultimate case of failure to conform to the female stereotype . . . she is not heterosexual." *Hively*, 853 F.3d at 346.

Similarly, here, Plaintiff also represents the ultimate failure to conform to the male stereotype – that failure being his attraction, relationship with and, in fact, his lawful marriage to, another male. Furthermore, Defendant's statement that Plaintiff has not alleged any gender non-conforming behavior in this case is simply not true: aside from alleging his status as a homosexual male, Plaintiff alleged that his offer of employment was withdrawn after he revealed

his *relationship with another man* to Faye Bienstock. Being in a relationship with a person of the same sex is most certainly a gender non-conforming behavior. In fact, the Supreme Court recently intervened to protect relationships between same-sex couples in *Obergefell*, 135 S. Ct. 2584, which held that the Constitution's Due Process and Equal Protection clauses guarantee same-sex couples the right to marry. It is precisely because these relationships do not conform to gender norms that such intervention was necessary. Indeed, it would make absolutely no logical sense for Title VII to protect "feminine mannerisms" of a gay man (*see Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1077 (9th Cir. 2002)), but not to protect Plaintiff's ultimate nonconformance to the male stereotype in this case: his relationship with and, in fact, his marriage to, another man.[1]

        c.     *Defendant treated Plaintiff less favorably because of his association with a person of a particular sex.*

In addition to alleging that Defendant discriminated against him due to his nonconformance with male stereotypes, Plaintiff has also alleged that Defendant discriminated against him because of his association with his male partner. In *Loving*, the Supreme Court held long ago that discrimination on the basis of the race with whom a person associates is a form of racial discrimination. *Loving*, 388 U.S. at 12. Similarly, discrimination on the basis of the sex with whom a person associates must be regarded as a form of sex discrimination under Title VII. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ("[A]n employer may violate Title VII if it takes action against an employee because of the employee's association with a person of

---

[1] As the *Hively* panel decision noted, although federal law now guarantees anyone the right to marry another person of the same gender, Title VII, to the extent that it does not reach sexual orientation discrimination, would also allow employers to fire their employees for doing so. *Hively v. Ivy Tech Cmty. Coll., S. Bend*, 830 F.3d 698, 714 (7th Cir. 2016). The *Hively* panel aptly acknowledged that "[f]rom an employee's perspective, the right to marriage might not feel like a real right if she can be fired for exercising it." *Id.*

another race."); *Price Waterhouse*, 490 U.S. 228 at 244 n. 9 (both sex and race are protected in the same manner under Title VII).

Defendant argues that *Loving* and its progeny are not relevant to this discussion because "Plaintiff's sexual orientation is not a 'protected characteristic' and his sex (male) is not 'defined in relation to the characteristics of a third party.'" Defendant's Memorandum at 7, n. 5. The case to which Defendant cites for its proposition, however, involved allegations that the defendant discriminated against the plaintiff because her health insurance plan did not cover medications and surgery relating to her son's gender reassignment. *Tovar v. Essentia Health*, 857 F.3d 771, 776 (8th Cir. 2017). The court held that because the discrimination alleged was not discrimination against the plaintiff herself, but rather her son, Title VII cases protecting employees in interracial relationships were not relevant. *Id.* In so holding, the court noted that Title VII cases protecting employees in interracial relationships "rest on the conclusion that the discrimination challenged . . . was based on an employee's own protected characteristic, *even if* the significance of that characteristic was defined in relation to the characteristics of a third party." *Id.* (Emphasis added).

Thus, *Tovar* did not hold that a person's characteristics must be 'defined in relation to the characteristics of a third party' to be protected. Rather, *Tovar* held that to recover under Title VII, the plaintiff him or herself must experience discrimination. Further, *Tovar* clarified that even if the plaintiff's characteristic seems insignificant on its own, if the characteristics of a third party with whom the plaintiff associates cause the plaintiff to experience discrimination, the plaintiff is nonetheless protected. As explained in *Tovar*, "a white employee who is discharged because his child is biracial is discriminated against on the basis of his race because the alleged discrimination was due to the plaintiff's race being different from his daughter's." *Id.*

This case is strikingly similar to the above example in *Tovar*, except the discrimination at issue is due to the plaintiff's *sex* being the *same* as his partner's. In this case, Plaintiff *has* in fact alleged discrimination against himself based on his own protected characteristic: his sex. Even though the *significance* of this characteristic is defined in relation to the characteristics of a third party – Plaintiff's husband – Plaintiff nonetheless has challenged Defendant's discrimination against *Plaintiff* himself based on sex, as opposed to discrimination against some third party.

What Defendant's argument appears to boil down to is an assertion that Plaintiff is not protected under Title VII in this case because, under Defendant's interpretation of the statute, men and women are equally unprotected from unfavorable treatment based on their sexual orientation. In *Loving*, however, the Supreme Court summarily rejected the argument that miscegenation statutes do not violate equal protection because they "punish equally both the white and Negro participants in an interracial marriage." *Loving*, 388 U.S. at 8. Defendant's attempt to perform mental gymnastics to accomplish the same result here, *i.e.*, the equal punishment of gay men and lesbian women, is therefore not well-taken.

In addition, to the extent that Defendant urges that Plaintiff is unprotected under Title VII because not *all* men are homosexual, and not *all* women are lesbian, this argument, too, must fail. The Supreme Court has already ruled that individuals who fail to conform to sex stereotypes are protected under Title VII. *Price Waterhouse*, 490 U.S. at 255. The group of women who fail to conform to the female gender stereotype is necessarily a subset of all women. Likewise, the group of men who fail to conform to the male gender stereotype is necessarily a subset of all men. As such, Supreme Court precedent does not require Plaintiff to represent all men in order to be protected under Title VII. To the extent that Defendant claims as much, its argument is unsound and inconsistent with the Supreme Court's rulings on this issue.

> d. *Defendant treated Plaintiff less favorably because of his sexual orientation, which is necessarily discrimination based on sex.*

The ultimate question here, as in all sex discrimination cases, is whether Defendant would have treated Plaintiff the same way if he was female, holding all other variables constant. *See City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978) ("Such a practice does not pass the simple test of whether the evidence shows 'treatment of a person in a manner which but for that person's sex would be different.'"). As Chief Justice Roberts asked recently during oral arguments in *Obergefell*, "[i]f Sue loves Joe and Tom loves Joe, Sue can marry him and Tom can't. And the difference is based upon their different sex. Why isn't that a straightforward question of sexual discrimination?" *Obergefell*, 135 S. Ct. 2584; transcript of oral argument at 62:1-4. Similarly, here, Plaintiff has essentially asserted that if he was a "Martha" instead of a "Mark," Defendant would not have withdrawn Plaintiff's offer of employment after learning of his relationship with another man. Presuming all of Plaintiff's allegations as true, Defendant therefore discriminated against Plaintiff because of his sex.

> 2. <u>Defendant discriminated against Plaintiff because his homosexuality and marriage to another man could not be reconciled with the religious beliefs of Defendant's owners.</u>

Defendant argues that Plaintiff has failed to state a claim for religious discrimination because it is a "re-packaging" of a sexual orientation discrimination claim, which Defendant argues is not prohibited by Title VII under *Williamson*. As explained above, however, *Williamson* is inconsistent with relevant Supreme Court rulings issued since it was decided, and for that reason this Court is not bound by it.

Defendant further argues that because Plaintiff has not alleged what his own religion is, nor that he informed Defendant of his religion, Plaintiff's claim must fail under *Tovar*, as he has not alleged that he is part of a protected class. Again, as noted above, *Tovar* held that it was

because the plaintiff had not alleged discrimination against herself, but rather her son, that plaintiff's Title VII claim failed. *Tovar*, 857 F.3d at 776. *Tovar* is inapposite here, however, because Title VII protects individuals not only from discrimination on the basis of their *own* religious beliefs, but also from forced religious conformity or adverse treatment because they do not hold or follow *the defendant's* religious beliefs. *See Sarenpa v. Express Images Inc.*, No. CIV.04-1538(JRT/JSM), 2005 WL 3299455, at *3 (D. Minn. Sept. 8, 2005) ("Title VII has also been found to encompass situations in which an employee suffers an adverse employment action because he or she does not conform to the religious expectations of his or her employer.") (citing *Campos v. City of Blue Springs, Missouri*, 289 F.3d 546, 550 (8th Cir. 2002) (upholding jury verdict finding that employee was constructively discharged because she was not a Christian)).

*Sarenpa* and *Campos* follow the line of reasoning first set forth in *Shapolia v. Los Alamos Nat. Lab.*, 992 F.2d 1033, 1038 (10th Cir. 1993). In *Shapolia*, the Tenth Circuit held that when the discrimination alleged is not targeted against a particular religion, but against those who do not share a particular religious belief, it is not necessary to show that the plaintiff is part of a protected class. *Id.* As such, Defendant's insistence that Plaintiff do so in this case is contrary to established Title VII jurisprudence followed by the Eighth Circuit and this Court. *See Kaminsky v. Saint Louis Univ. Sch. of Med.*, No. 4:05 CV 1112 CDP, 2006 WL 2376232, at *5 (E.D. Mo. Aug. 16, 2006) (*citing Shapolia*, 992 F.2d 1033), *aff'd*, 226 F. App'x 646 (8th Cir. 2007).

Finally, in addition to its argument that Plaintiff has not alleged he is part of a protected class (which is not required), Defendant appears to assert that Plaintiff's relationship with another man constitutes a personal activity, as opposed to a religious belief. It is difficult, however, to logically distinguish Plaintiff's allegations in this case from the allegations at issue in *Sarenpa*. There, the plaintiff alleged he had an extramarital affair, contrary to his employer's

religious beliefs, and his claim for adverse action by his employer as a result survived a motion for summary judgment. *Sarenpa*, 2005 WL 3299455 at *4. It is not clear why Plaintiff's allegation of adverse action because of his relationship with someone of the same sex, contrary to Defendant's owners' religious beliefs, should not similarly survive here. *See, e.g., Terveer v. Billington*, 34 F. Supp. 3d 100, 117–18 (D.D.C. 2014) (denying motion to dismiss where employee alleged he was targeted for religious harassment due to his status as a homosexual).

For all of these reasons, Counts I and II state cognizable claims for discrimination based on Plaintiff's sex and his failure to conform to Defendant's owners' religious expectations, respectively. Therefore, Counts I and II must stand.

### C. Plaintiff Has Sufficiently Pled a Claim for Fraudulent Inducement of Future At-Will Employment – A Claim Recognized in Missouri Courts.

Defendant argues that Plaintiff cannot state a claim for fraudulent inducement because the job offer at issue was for employment at-will and, therefore, Plaintiff was precluded from reasonably relying on any offer of employment. Defendant further asserts that Count III fails to state a claim because Plaintiff has not alleged any actionable representation by Defendant. Finally, Defendant claims that Plaintiff has not adequately pled Count III due to heightened pleading standards for fraud claims. Each of these arguments is addressed in turn below.

#### 1. Missouri recognizes claims for fraudulent inducement of future at-will employment.

Conspicuously missing from Defendant's list of case law purportedly holding that Missouri does not recognize claims of fraud predicated on reliance on a promise to hire a plaintiff as an at-will employee is *O'Neal v. Stifel, Nicolaus & Co.*, 996 S.W.2d 700 (Mo. Ct. App. 1999). In *O'Neal*, the defendant sent a written offer of employment to the plaintiff, which did not set forth the duration of the proposed employment relationship or limit the reasons for

which the plaintiff could be discharged. *O'Neal*, 996 S.W.2d at 701. One week before the plaintiff was to commence employment, the defendant notified the plaintiff that the defendant would not employ him per the terms of their agreement. *Id.* The plaintiff filed suit against the defendant, including two counts: (1) breach of contract, and (2) fraudulent inducement. *Id.* The trial court found that the employment at-will relationship between the parties precluded the plaintiff's contract claim as a matter of law, and further determined that the plaintiff's fraudulent inducement claim would be dismissed because it depended on the same facts as the contract claim. *Id.* at 701-02.

The Missouri Court of Appeals, Eastern District, reversed the trial court's dismissal of the plaintiff's fraudulent inducement claim, holding that such claim arose out of the defendant's representation that the plaintiff would actually become an employee of the defendant. *Id.* at 702. The court held that the alleged fraud arose out of negotiations that occurred prior to employment, and such negotiations amounted to a separate cause of action for fraud under Missouri law. *Id.* The appellate court distinguished other cases in which fraud claims were actually "cloaked" breach of contract claims, noting that the plaintiff did not contend that the defendant misrepresented the terms of any contract, but rather contended that the defendant misrepresented the nature of their relationship in the negotiation of the employment contract. *Id.* at 703.

The cases that Defendant cites for its proposition that the employment at-will doctrine precludes Plaintiff's fraudulent inducement claim either pre-date *O'Neal*, discuss claims of negligent misrepresentation as opposed to fraudulent inducement, or were not decided in Missouri or the Eighth Circuit. This Court, however, has recognized that under *O'Neal*, fraud that occurs during the negotiation of a contract is a separate cause of action from breach of contract in Missouri, because "a party who fraudulently induces another to contract and then also

refuses to perform the contract commits two separate wrongs." *Tank Holdings, Inc. v. Bell*, No. 4:12-CV-713, 2013 WL 4502458, at *12 (E.D. Mo. Aug. 22, 2013) (citing *O'Neal*).

Plaintiff has not presented this Court with a claim for breach of contract because, as indicated in *O'Neal*, the doctrine of employment at-will would preclude such a claim. *O'Neal* illustrates, however, with facts nearly identical to those in this case, that Plaintiff's claim for fraudulent inducement is proper. Plaintiff's claim is cognizable because it is premised not upon the parties' negotiations of the *terms* of Plaintiff's employment, but upon Defendant's representations confirming that it had no objection to a delay in obtaining Plaintiff's educational records, and that Defendant nonetheless wished for Plaintiff to become Defendant's employee.

2. <u>Defendant misrepresented its willingness to hire Plaintiff despite knowing of a delay of four to six weeks in obtaining his educational records.</u>

In a footnote, Defendant urges that Count III does not state a claim because Plaintiff has not identified an actionable representation by Defendant. To the contrary, Plaintiff has alleged that he informed Defendant of the fact that there would be a four to six week delay in obtaining his educational records, and thereafter, Defendant confirmed that it had no objection to the delay by stating, among other things, *"Wonderful! Congratulations! We are so excited! When will be your anticipated start date?"*

Defendant argues that Plaintiff's claim fails because Plaintiff must plead facts showing that Defendant had a duty to object to Plaintiff's statement regarding the delay, and that Defendant failed to do so. However, Plaintiff has already pled these facts. Missouri law imposes a duty to disclose information when one of the parties has superior knowledge or information not within the fair and reasonable reach of the other, and the other party was unable to discover the concealed information despite reasonable diligence. *Bohac v. Walsh*, 223 S.W.3d 858, 864 (Mo. Ct. App. 2007). In this case, Defendant was clearly the only party that could have

known of its objection to the delay in obtaining Plaintiff's educational records, and Plaintiff has alleged his reasonable diligence in attempting to discover whether any such objection existed. Complaint, ¶ 78 ("Plaintiff attempted to ascertain whether MGM had any objection to a delay in obtaining his educational records within a four to six week timeline, and exercised reasonable diligence in doing so by promptly informing MGM of said delay."). As such, Plaintiff has adequately alleged his fraudulent inducement claim.

3. <u>Plaintiff has adequately pled his claim of fraudulent inducement under the heightened pleading standards of Fed. R. Civ. P. 9(b).</u>

Defendant claims (again, in a footnote) that Plaintiff has not pled his fraudulent inducement claim with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Defendant ignores the fact that Rule 9(b), however, must be must be read in harmony with the principles of notice pleading, and need not provide anything more than "heightened notice" of a claim. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). Furthermore, Rule 9(b) does not require a complaint to include highly specific allegations when the plaintiff alleges an omission as opposed to a representation, given that the facts constituting the fraud at issue are peculiarly within the opposing party's knowledge. *Lewey v. Vi-Jon, Inc.*, No. 4:11CV1341, 2012 WL 1859031, at *3 (E.D. Mo. May 22, 2012) (citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

In *Lewey*, for example, the court held that when the plaintiff stated an approximate time frame and that material information was not provided to her, Plaintiff had satisfied the requirements of Rule 9(b). *Id.* The *Lewey* complaint does not allege the exact date that the defendant's fraud by omission occurred; rather, the date the plaintiff signed the agreement at issue is provided, as well as the date the plaintiff learned of the fraudulent omission. *See Lewey v. Vi-Jon, Inc.*, No. 4:11CV1341, Doc. No. 1. The *Lewey* complaint also does not allege how the

defendant communicated with the plaintiff (*e.g.*, e-mail, phone, in person) regarding the alleged fraud. *See id.* Nonetheless, the *Lewey* complaint sufficiently stated a claim.

Here, as in *Lewey*, Plaintiff has provided the approximate time frame involved in his claim for fraudulent inducement (between April 21, 2016 and May 4, 2016). Plaintiff has also alleged that after disclosing the potential for delay to Defendant and its agents, Defendant confirmed that it had no objection to the delay, stating in an e-mail on May 4, "*Wonderful! Congratulations! We are so excited! When will be your anticipated start date?*" Plaintiff has therefore sufficiently pled his claim for fraudulent inducement with sufficient particularity to survive the instant motion to dismiss, and in fact with more particularity than the *Lewey* complaint.[2] Moreover, even if Plaintiff has not sufficiently pled Count III, Plaintiff requests leave to amend such count pursuant to Rule 15(a)(2) ("The court should freely give leave when justice so requires."), as Plaintiff has ample factual information to state his claim.

### III. CONCLUSION

WHEREFORE, Plaintiff, Mark Horton, respectfully requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Complaint, and grant such other and further relief as the court deems just and proper.

---

[2] Defendant's argument that Plaintiff has failed to allege with particularity items such as how Plaintiff investigated the reason for HireRight's difficulty in obtaining his educational records is beside the point. Plaintiff is not claiming any fraud regarding his own investigation into the reason for the delay, but rather fraud in Defendant's failure to inform Plaintiff of any objection to the delay in obtaining Plaintiff's educational records.

Respectfully Submitted,

MATHIS, MARIFIAN & RICHTER, LTD.

By  */s/Mark S. Schuver*
    Mark S. Schuver, #34713
    Natalie T. Lorenz, #65566
    23 Public Square, Suite 300
    P.O. Box 307
    Belleville, IL 62220
    (618) 234-9800 Phone
    (618) 234-9786 Fax
    mschuver@mmrltd.com
    nlorenz@mmrltd.com

    Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 12, 2017, a true and correct copy of the foregoing was served via the Court's electronic filing system upon all counsel of record, pursuant to the Court's Local Rules.

        */s/Mark S. Schuver*