# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| MARK HORTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-2324 |
| | ) | |
| MIDWEST GERIATRIC MANAGEMENT, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MGM'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I. INTRODUCTION

There can be no dispute that Counts I and II, which allege discrimination based solely on sexual orientation (though styled as "sex" and "religion"), are precluded as a matter of law by the Eighth Circuit's decision in *Williamson*. Recognizing as much, Plaintiff advocates for a reversal of *Williamson* in favor of the Seventh Circuit's recent decision in *Hively*, where that court (sitting *en banc*) reversed long-standing precedent to become the first and only circuit court to extend Title VII's protections to sexual orientation. Plaintiff's reliance on *Hively* is misplaced, as Plaintiff and *Hively* misread the plain text of Title VII, misconstrue several Supreme Court decisions, and ignore decades of precedent in the Eighth Circuit and elsewhere, all of which preclude Counts I and II. The Court should decline Plaintiff's invitation to judicially amend Title VII—in contravention of clear, binding Eighth Circuit precedent—and should instead dismiss Counts I and II with prejudice.

Count III for fraudulent inducement also fails as a matter of law because the job offered by MGM to Plaintiff was expressly contingent on a successful completion of a background check and merely constituted a promise of future employment <u>at will</u>. Count III should thus similarly be dismissed by this Court for failure to state a claim.

2246675

Accordingly, and for all the reasons discussed further below and in MGM's Memorandum in Support of its Motion to Dismiss, each of Plaintiff's claims fail to state a claim upon which relief can be granted, and this action should be dismissed with prejudice, in its entirety.

## II. ARGUMENT

### A. Counts I and II Should Be Dismissed Because They Allege Only Non-Actionable Discrimination Based on Sexual Orientation.

In Counts I and II, Plaintiff alleges discrimination based on sexual orientation. (*See, e.g.*, Complaint, ¶ 48 (alleging that MGM withdrew its offer of employment "after learning of Plaintiff's homosexual relationship"), ¶ 48(a) (alleging that MGM "treated Plaintiff less favorably because of his sexual orientation, which is necessarily discrimination based on sex").) Tacitly recognizing the non-actionable nature of his allegations under Title VII, Plaintiff sets forth what can only be viewed as policy arguments for this Court to extend Title VII to include sexual orientation vis-à-vis Title VII's prohibition on discrimination based upon "sex" and "religion." As set forth more fully in MGM's opening brief and below, because the law in the Eighth Circuit is clear that Plaintiff cannot re-package a claim of non-actionable sexual orientation discrimination into a Title VII claim for sex or religious discrimination, Counts I and II should be dismissed, with prejudice.

#### 1. *Well-settled, binding Eighth Circuit precedent precludes Plaintiff's Title VII claims (Counts I and II).*

As stated previously, binding Eighth Circuit precedent precludes Counts I and II because sexual orientation is not a protected classification under Title VII. *See, e.g.*, MGM's Br., [ECF#: 7], at 3-4; *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (per curiam) ("Title VII does not prohibit discrimination against homosexuals."). Unable to avoid this clear precedent, Plaintiff instead argues that *Williamson* is "outdated" and effectively asks this Court to adopt an outlier approach recently taken by the Seventh Circuit in *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 343 (7th Cir. 2017). In *Hively*, the *en banc* Seventh Circuit panel became

2

the only Circuit Court of Appeals to conclude that "sexual orientation" is encompassed within Title VII's prohibition against discrimination "because of . . . sex." However, *Hively* is not the law of this Circuit, and contrary to Plaintiff's assertions, *Williamson* is neither outdated nor inconsistent with the weight and rationale of Title VII precedent.

In *Hively*, the Seventh Circuit departed from over thirty years of well-settled precedent of every other Court of Appeals—including the Eighth Circuit—concluding that Title VII's prohibition on sex discrimination does not encompass sexual orientation discrimination. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1255 (11th Cir. 2017); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762-63 (6th Cir. 2006); *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005); *Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1063 (7th Cir. 2003), *overruled by Hively*, 853 F.3d at 343; *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999); *Fredette v. BVP Mgmt. Assocs.*, 112 F.3d 1503, 1510 (11th Cir. 1997); *Wrightson v. Pizza Hut*, 99 F.3d 138, 143 (4th Cir. 1996); *U.S. Dep't of Hous. & Urban Dev. v. FLRA*, 964 F.2d 1, 2 (D.C. Cir. 1992); *Williamson*, 876 F.2d at 70; *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 329-30 (9th Cir. 1979), *abrogated in part on other grounds by Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874-75 (9th Cir. 2001); *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979). Thus, to adopt the approach of Plaintiff and *Hively* would require this Court to depart from decades of uniform judicial precedent.

In any case, the only binding precedent in this Circuit that concerns Plaintiff's allegations is the decision of the Eighth Circuit in *Williamson*. *See* 876 F.2d at 70 ("Title VII does not prohibit discrimination against homosexuals."). This Court has applied *Williamson* as recently as 2013. *See Johnson v. Shinseki,* No. 1:12-CV-00187SNLJ, 2013 WL 1987352, at *2 (E.D. Mo. May 13,

2013); *see also Logan v. Chertoff*, No. 4:07-CV-1948 CAS, 2009 WL 3064882, at *1, n.3 (E.D. Mo. Sept. 22, 2009), *aff'd sub nom*. 376 F. App'x 660 (8th Cir. 2010). As this Court succinctly proclaimed in rejecting a plaintiff's analogous request to apply the inconsistent law of another circuit, "[t]his Court is bound by the law of the Eighth Circuit." *Lake v. Consumer Adjustment Co., Inc.*, No. 4:15-CV-01495-JCH, 2015 WL 8770719, at *3 (E.D. Mo. Dec. 14, 2015) (citing *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003) (reversing a district court that "embraced the reasoning of" other circuits instead of the Eighth Circuit, and holding that a district court "is bound [] to apply the precedent of [the Eighth Circuit].")). Moreover, contrary to Plaintiff's assertion, *Bressman v. Farrier*, 900 F.2d 1305, 1318 (8th Cir. 1990) (Heaney, J., concurring and dissenting) does not support a departure from *Williamson*. There, the concurring and dissenting judge simply observed the unremarkable, general rule that one panel of the appellate court cannot overrule the decision of another panel. Thus, *Williamson* remains controlling law until overruled by the Eighth Circuit sitting *en banc*, or until "clearly supersede[d]" by "a Supreme Court decision or legislative act." *Id.* at 1318 n.25. Neither Congress nor the Supreme Court has extended Title VII to prohibit discrimination based on sexual orientation, and this Court must therefore reject Plaintiff's invitation to do so here.

In sum, this Court is bound by Eighth Circuit precedent, and Plaintiff's Title VII claims alleging only that he was discriminated against because of his sexual orientation fail to state a claim. Thus, Counts I and II should be dismissed with prejudice.

> 2. *The statutory text, subsequent congressional activity, and Supreme Court precedent all support dismissal of Counts I and II.*

Next, Plaintiff argues that existing Supreme Court case law supports departing from binding precedent and extending Title VII's prohibition against "discrimination . . . because of . . . sex" to encompass discrimination based on an individual's sexual orientation. *See* Pl.'s Br.

4

[ECF#: 13], at 3 (citing *Loving v. Virginia*, 388 U.S. 1 (1967), *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), and *Obergefell v. Hodges*, --- U.S. ---, 135 S. Ct. 2584 (2015)). Plaintiff misreads these cases, and there is simply no United States Supreme Court authority supporting Plaintiff's assertion that Title VII extends to sexual orientation.

As explained in MGM's opening brief and more fully above, *supra* at 2-3, the many prior decisions of the Eighth Circuit and other federal circuit and district courts around the nation have uniformly concluded that the pertinent text and meaning of Title VII cannot be read to reach discrimination based on sexual orientation.[1] *See supra*, at 3-4; *see also Hively*, 853 F.3d at 355 (Posner, J., concurring) ("A broader understanding of the word 'sex' in Title VII than the original understanding is thus required in order to be able to classify the discrimination of which Hively complains as a form of sex discrimination."). Nonetheless, Plaintiff incorrectly argues that *Oncale* opens an interpretive path for this Court to extend Title VII to reach sexual orientation. Pl.'s Br. [ECF#: 13], at 3-4.

Specifically, Plaintiff points to language in *Oncale*, wherein the Supreme Court noted, "statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Pl.'s Br. [ECF#: 13], at 4 (quoting *Oncale*, 523 U.S. at 79). However, *Oncale* held only that same-sex sexual harassment may support a claim under Title VII provided that it "meets the statutory requirements." *Oncale*, 523 U.S. at 79-80. Indeed, the *Oncale* Court

---

[1] The pertinent section of Title VII provides: "It shall be an unlawful employment practice . . . to fail or refuse to hire . . . , or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

reiterated that in all sex discrimination cases, "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). As this Court recognized in *Johnson*, *Oncale* "did not change the well-settled precedent that 'sex' refers to membership in a class delineated by gender" and that "[a]lthough there may be a Title VII claim in cases that involve same-sex harassment, Title VII does not proscribe harassment simply because of sexual orientation." *Johnson*, 2013 WL 1987352, at *2 (internal quotation marks and citations omitted) (collecting cases); *cf. Wolfe v. Fayetteville, Arkansas Sch. Dist.*, 648 F.3d 860, 866 (8th Cir. 2011) ("We are persuaded by *Oncale*'s implication as to the Title VII language 'discrimination . . . because of . . . sex' requiring a plaintiff to prove a gender-based motive . . . .") (internal alterations and citations omitted). In other words, though a plaintiff in a same-sex relationship can maintain a sex discrimination claim, that claim must be based on the plaintiff's *sex*, not *sexual orientation*. *See Johnson*, 2013 WL 1987352, at *2 (holding that "*Oncale* did not change the requirement that plaintiffs demonstrate that the discrimination or harassment took place 'because . . . of sex.'").

Plaintiff next incorrectly argues that subsequent congressional activity (considering but declining to extend Title VII to prohibit sexual orientation discrimination) should also be ignored. However, it is a well-established interpretive principle that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 792 (1998) ("[T]he force of precedent here is enhanced by Congress's amendment to the liability provisions of Title VII since the *Meritor* decision, without providing any modification of our holding."). Indeed, when Congress enacted the Civil Rights

Act of 1991, it ratified the settled understanding that Title VII does not extend to sexual orientation. *See, e.g.*, *Williamson*, 876 F.2d at 70; *DeSantis*, 608 F.2d at 329-30; *Blum*, 597 F.2d at 938. Moreover, since then, "Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation." *Johnson*, 2013 WL 1987352, at *2 (citing *Bibby*, 260 F.3d 261, and, *e.g.*, Employment Nondiscrimination Act of 1996, S.2056, 104th Cong. (1996); Employment Non Discrimination Act of 1995, H.R. 1863, 104th Cong. (1995); Employment Non–Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994)).

In short, the statutory text and subsequent congressional activity reinforce that Title VII does not extend to Plaintiff's claims for discrimination based on sexual orientation.

3. *Plaintiff failed to adequately plead a claim for sex stereotyping*.

Next, Plaintiff incorrectly argues that he has stated a claim for "sex" discrimination based on his allegation that MGM discriminated against him because he failed to conform to "the male sex stereotype" after he told MGM he was in a partnership with another man. *See* Pl.'s Br. [ECF#: 13], at 4-6.

While it is true (as MGM explained in its opening brief) that the Supreme Court has recognized a Title VII claim may be based on evidence of discrimination relating to a person's gender non-conforming characteristics, *see Price Waterhouse*, 490 U.S. at 250–51, the Court focused on characteristics that were demonstrable in the workplace through the plaintiff's appearance or observable behavior. There, for example, the stereotype against aggressive women treated businesswomen worse than similarly situated businessmen: "[a]n employer who objects to aggressiveness in women but whose positions require this trait places women in an intolerable and impermissible catch 22: out of a job if they behave aggressively and out of a job if they do not." *Id.* at 251; *see also* MGM's Br., [ECF#: 7], at 9, *citing, e.g.*, *Vickers*, 453 F.3d at 763 (explaining that "cases applying *Price Waterhouse* have interpreted it as applying where gender non-

7

conformance is <u>demonstrable through the plaintiff's appearance or behavior</u>" (emphasis added) (collecting cases)). In other words, as courts have recognized, *Price Waterhouse* did not extend Title VII to include sexual orientation vis-à-vis gender non-conforming behavior. *See, e.g.*, *Pambianchi v. Ark. Tech Univ.*, No. 4:13-CV-00046-KGB, 2014 WL 11498236, at *5 (E.D. Ark. Mar. 14, 2014) ("Most courts generally attempt to distinguish between discrimination based on stereotypical notions of femininity and masculinity and that based on sexual orientation, determining the former is actionable under Title VII while the latter is not." (collecting cases)); *Bland v. Burwell,* No. 14-0226-CV-W-ODS, 2016 WL 110597, at *1-2 (W.D. Mo. Jan. 8, 2016) (dismissing Title VII "sex" discrimination claim based only on "allegations as to why [plaintiff] was discriminated based on his sexual orientation" because "[s]exual orientation is not a protected class under Title VII" and thus the plaintiff "summarily stating . . . that he was discriminated against 'on the basis of his race, sex and perceived sexual orientation' [was] insufficient" to state a claim) (citations omitted).

Here, Plaintiff does not allege that he was the subject of discrimination because his appearance or mannerisms were not masculine or did not conform to gender norms in any observable way. Instead, Plaintiff alleges <u>only</u> that he was discriminated against because he disclosed to MGM that he had a same-sex partner, not because MGM had some sex-specific theory about how men, as opposed to women, should appear or behave. The opposite-sex attraction "stereotype" relied upon by Plaintiff does not result in disparate treatment based on sex because men are treated no better or worse than similarly situated women are. Indeed, Plaintiff's exact argument has been rejected. *See, e.g.*, *Pambianchi*, 2014 WL 11498236, at *5 ("Courts have routinely rejected attempts to use a sex-stereotyping theory to bring under Title VII what is in

8

essence a claim for discrimination on the basis of sexual orientation." (collecting cases)). Thus, Plaintiff fails to state a plausible claim in Counts I and II based on a sex-stereotype theory.

    4.  *Plaintiff's associational theory of "sex" discrimination in Count I fails to state a claim as a matter of law.*

Next, Plaintiff contends that sexual orientation discrimination is "associational discrimination" based on sex. Plaintiff's argument relies on *Loving v. Virginia*, 388 U.S. 1 (1967) and its progeny of cases involving discrimination against interracial relationships.

Initially, *Loving* was decided over two decades before *Williamson*, and thus cannot be construed to have overruled *Williamson*. Substantively, *Loving* involved a constitutional challenge to a state law that prohibited only whites from marrying other races but permitted intermarriage among nonwhites. *Loving* is not about Title VII, and it has no bearing on the issues raised in this case. *See Hively*, 853 F.3d at 356 (Posner, J., concurring).[2] Moreover, Title VII prohibits an employer from discriminating against an applicant in an interracial relationship, not because that constitutes "associational discrimination" *per se*, but instead because it constitutes discrimination against the applicant "because of such individual's race." 42 U.S.C. § 2000e-2(a). In particular, the employer is treating an employee of one race differently from similarly situated employees of the partner's race, solely because the employer deems the employee's own race to be either inferior or superior to the partner's race. In contrast to the interracial relationship cases, an employer who discriminates against an applicant in a same-sex relationship is not engaged in sex-based treatment

---

[2] Similarly, to the extent Plaintiff relies on *Obergefell v. Hodges*, --- U.S. ---, 135 S. Ct. 2584 (2015)) as purported support for his argument that sexual orientation discrimination claims are actionable under Title VII, *see* Pl.'s Br. [ECF#: 13], at 9, such reliance is also misplaced. Although *Obergefell* did extend certain constitutional rights to homosexuals, the Court did not address or in any way alter the statutory interpretations of Title VII. Simply put, *Obergefell* does not impact the issue of sexual orientation discrimination under Title VII.

of men as inferior to similarly situated women (or vice versa), but rather is engaged in sex-neutral treatment of homosexual men and women alike.

In this regard that Plaintiff's reliance on *Tovar v. Essentia Health*, 857 F.3d 771 (8th Cir. 2017) is misplaced. *Tovar* clarifies that Title VII requires an applicant "who seeks relief under that statute to have suffered discrimination on the basis of her own protected characteristic." *Id.* at 776. Here, Plaintiff alleges only sex-neutral disparate treatment based on sexual orientation. This is not discrimination "based on an employee's own protected characteristic" sufficient to state a Title VII claim. Indeed, while there is nothing race neutral about the interracial association cases, there is nothing sex-specific about Plaintiff's sexual orientation discrimination claims. Plaintiff's analogy to racial discrimination is inapposite, and Plaintiff's "associational" theory of "sex" discrimination fails as a matter of law.

> 5. *Count II further fails to state a claim as a matter of law because it is based solely on sexual orientation and because it alleges no facts that could plausibly suggest discrimination based on religion.*

As stated previously, Count II is nothing more than an attempted re-packaging of Plaintiff's core allegation of non-actionable discrimination under Title VII based upon sexual orientation. *See* Complaint, ¶ 64 ("Plaintiff did not share [MGM's] religious beliefs, and in fact held different beliefs which permitted him to be in a homosexual marriage and relationship."); *see also* MGM's Br., [ECF#: 7], at 9-11 (collecting cases).

In response, Plaintiff cites several non-binding cases for the proposition that an employer can violate Title VII's ban on religious discrimination through forced conformity to a certain religion or religious practice. *See* Pl.'s Br. [ECF#: 13], at 9-11]. However, each of those cases is entirely distinguishable from Plaintiff's claim here because, among other reasons, there were actual facts alleged or adduced in those cases that could plausibly support a claim of forced religious conformity. Here, there is no dispute that Plaintiff <u>only</u> alleges (in conclusory fashion

10

and upon information and belief) that his sexual orientation is not in conformance with MGM employees' religion. This threadbare allegation—based exclusively on sexual orientation—cannot transform a nonactionable claim of sexual orientation discrimination into one of religious discrimination. *See, e.g.*, MGM's Br., [ECF#: 7], at 9-11; *see also Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 293 (3d Cir. 2009) (affirming dismissal of Title VII claim for religious discrimination "based exclusively upon [the plaintiff's] homosexual status" where the plaintiff failed to cite "any facts supporting [] religious coercion"); *Bennefield v. Mid-Valley Healthcare, Inc.*, No. 6:13-CV-00252-MC, 2014 WL 4187529, at *5 (D. Or. Aug. 21, 2014) (dismissing Title VII religious discrimination in "a case centered around alleged discrimination based on [plaintiff's] sexual orientation" because plaintiff's "claim of religious discrimination, based on a single comment where she simply refused to discuss religion at work, is merely a repackaged claim for sexual orientation discrimination."). Thus, because Plaintiff's Count II is "based exclusively on his homosexual status," it fails as a matter of law. *See, e.g.*, *Williamson,* 876 F.2d at 70 ("Title VII does not prohibit discrimination against homosexuals.").

In sum, Counts I and II allege discrimination based <u>solely</u> upon sexual orientation. Under well-established and controlling Eighth Circuit precedent, such claims are not viable under Title VII. As a result, Counts I and II should be dismissed, with prejudice.

  B. <u>Count III Should Be Dismissed Because Plaintiff Fails to State a Claim for Fraudulent Inducement as a Matter of Law</u>.

In its opening brief, MGM demonstrated that Plaintiff Count III is fails as a matter of law because in Missouri a plaintiff alleging fraud cannot establish the element of reasonable reliance where the claim arises out of a promise of future at-will employment. *See,* MGM's Br., [ECF#: 7], at 11-13 (collecting cases). In response, Plaintiff does not (and cannot) refute the long line of cases precluding his claim. Instead, Plaintiff cites a single inapposite Missouri case to argue that

fraud arising out of pre-employment negotiations can amount to a cause of action under Missouri law separate from a breach of contract claim. *See* Pl.'s Br. [ECF#: 13], at 9-11 (citing *O'Neal v. Stifel, Nicolaus & Co.*, 996 S.W.2d 700, 702 (Mo. Ct. App. E.D. 1999)).

In *O'Neal*, the court held that the plaintiff could state a claim for fraudulent inducement because he alleged the defendant fraudulently misrepresented the nature of their relationship. This was because the plaintiff's claim arose out of the defendant's statement in negotiations "that he would actually become an employee of the corporation." *Id.* The court analogized to *Bernoudy v. Dura–Bond Concrete Restoration, Inc.*, 828 F.2d 1316, 1318 (8th Cir. 1987) (applying Missouri law), where the Eighth Circuit held that the plaintiff in that case stated an actionable fraud claim because it arose out of the defendant's statement during negotiations that the plaintiff would be employed for at least eight years. Notably, however, the *O'Neal* court took care to distinguish statements of <u>present intent for definitive employment</u> from "statements and representations as to <u>expectations and predictions for the future</u> [which] are insufficient to authorize recovery for fraudulent misrepresentation." *Id.* at 703–04 (emphasis added).

Here, Plaintiff alleges he received an expressly contingent job offer for a future <u>at-will</u> employment relationship that could be terminated by either party <u>at any time</u>. In this regard, Plaintiff does not allege MGM made any present statements of fact during negotiations that he would actually become an employee of MGM, or that he would actually be employed for a certain period of time. Rather, as Plaintiff alleges, the offer of employment expressly provided that it was "contingent upon a successful completion of background checks and references," and that "MGM Healthcare is an at-will employer" which "means that either you or MGM are free to end the

employment relationship at any time, with or without notice or cause."[3] (Complaint, Ex. 3.) As the *O'Neal* court recognized, such statements regarding a future prediction of at-will employment necessarily do not give rise to a fraudulent inducement claim. *See also* MGM's Br., [ECF#: 7], at 11-13 (collecting cases). As such, Plaintiff fails to state a fraudulent inducement claim as a matter of law. Count III should be dismissed, with prejudice.

Finally, as noted in MGM's opening brief, Plaintiff fails to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) with respect to Count III. *See,* MGM's Br., [ECF#: 7], at 13, n.9. In response, Plaintiff makes much out of an isolated statement in *Lewey v. Vi-Jon, Inc.*, No. 4:11CV1341 JAR, 2012 WL 1859031, at *3 (E.D. Mo. May 22, 2012), that the plaintiff in that case satisfied Rule 9(b) by sufficiently alleging an "approximate timeframe" for a fraud by omission. However, the "approximate timeframe" alleged here is far more vague than in *Lewey*, and Plaintiff further fails to adequately allege many more necessary details of a purported fraud to satisfy the dictates of Rule 9(b). *See, e.g.*, *Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 822 (E.D. Mo. 2013) ("Rule 9(b), applicable to the fraudulent inducement claim here, requires that circumstances constituting fraud be pleaded with particularity."). In any event, Plaintiff's claim for fraudulent inducement based on at-will employment fails as a matter of law, such that re-pleading would be futile.

---

[3] Similarly, the statement: "Congratulations! We are so excited! When will be your *anticipated* start date" (emphasis added) – made during the pendency of a required background check – is a statement of expectation and prediction as opposed to a statement of present intent. *See, e.g.*, *Ariel Preferred Retail Grp., LLC v. CWCapital Asset Mgmt.*, No. 4:10CV623SNLJ, 2011 WL 4501049, at *8 (E.D. Mo. Sept. 28, 2011).

III. **CONCLUSION**

For all of the reasons set forth herein and in MGM's Motion and Memorandum in Support of its Motion, MGM respectfully requests that Plaintiff's Complaint be dismissed in its entirety, with prejudice, and for such other relief to MGM as may be appropriate and just.

Dated: November 2, 2017

Respectfully submitted,

/s/ Philip J. Mackey
Philip J. Mackey, 48630MO
Michael L. Jente, 62980MO
LEWIS RICE LLC
600 Washington Ave., Ste. 2500
St. Louis, Missouri 63101-1311
Telephone: 314.444.1343
Facsimile: 314.612.1343
E-mail: pmackey@lewisrice.com
mjente@lewisrice.com

*Attorneys for Defendant Midwest Geriatric Management, LLC*

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on November 2, 2017, a true and correct copy of the foregoing was served via the Court's electronic filing system upon all counsel of record, pursuant to the Court's Local Rules.

                  /s/ Philip J. Mackey