UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK HORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 4:17CV2324 JCH |
| | ) |
| MIDWEST GERIATRIC | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendant MGM's Motion to Dismiss Plaintiff's Complaint, filed September 26, 2017. (ECF No. 6). The motion is fully briefed and ready for disposition.

# BACKGROUND[1]

Plaintiff Mark Horton is a homosexual male who has been legally married under the laws of the State of Illinois to his male partner since November 14, 2014. (Compl., ¶ 8). Until on or about May 4, 2016, Plaintiff was employed as Vice President of Sales & Marketing with one of Defendant Midwest Geriatric Management, LLC's ("MGM") competitors, Celtic Healthcare ("Celtic"). (*Id.*, ¶¶ 9, 25-26).

In February, 2016, while still employed by Celtic, Plaintiff received an unsolicited e-mail from MGM's authorized agent, an executive search firm called "Jobplex," who represented it had been exclusively retained to identify a Vice President of Sales and Marketing for MGM.

---

[1] The Court's background section is taken from Plaintiff's Complaint, to which Defendant has not filed an answer.

1

(Compl., ¶ 11). Plaintiff agreed to undergo the application process, including one or more interviews with MGM's President and C.E.O., Judah Bienstock, and his wife, Faigie Bienstock ("Faye"). (*Id.*, ¶ 13).[2] On April 21, 2016, after completing a detailed assessment and interview process, the Bienstocks sent Plaintiff a written job offer on behalf of MGM. (*Id.*, ¶ 16 and attached Exh. 3). The offer stated in relevant part as follows:

> We are pleased to offer you the position of VP of Sales and Marketing at MGM Healthcare. This letter confirms an offer of employment with MGM Healthcare….
>
> This offer is also contingent upon successful completion of background checks and references….
>
> We look forward to developing our relationship with you and hope you view this opportunity as a chance to have a long term positive impact on our business. Nonetheless, please understand that MGM Healthcare is an at-will employer. That means that either you or MGM are free to end the employment relationship at any time, with or without notice or cause.

(Compl., attached Exh. 3).

After Plaintiff received the job offer, he was informed that a company named "HireRight" had been retained on behalf of MGM to perform the required background check. (Compl., ¶ 18). On or about April 21, 2016, Plaintiff was informed that HireRight was experiencing difficulty verifying Plaintiff's education with two colleges. (*Id.*, ¶ 19). After investigating the issue, Plaintiff determined that one of the colleges he had attended had been sold to another university, and as a result, the name had changed and the request for verification needed to be sent to the new entity. (*Id.*, ¶ 20). Plaintiff further determined that the second

---

[2] According to Plaintiff, Judah and Faye Bienstock are of the Jewish faith, and their religion plays a large part in their professional lives. (Compl., ¶¶ 14, 15).

college did not have computerized records, and therefore needed additional time to locate and copy Plaintiff's records. (*Id.*, ¶ 21). Plaintiff conveyed this information to Jobplex, HireRight, and MGM, and indicated that it could take four to six weeks to obtain the requested information. (*Id.*, ¶ 22). According to Plaintiff, neither Jobplex, HireRight, nor MGM voiced any concern over the potential delay. (*Id.*, ¶ 23).

On May 4, 2016, Plaintiff signed the written job offer accepting the position of Vice President of Sales and Marketing with MGM, and transmitted the signed document via e-mail to Faye and Jobplex. (Compl., ¶ 24). Plaintiff maintains Faye responded that same day on behalf of MGM, stating: "*Wonderful! Congratulations! We are so excited! When will be your anticipated start date?*" (*Id.*, ¶ 25). Based on this exchange, Plaintiff gave notice to Celtic that he was resigning his employment, and on May 10, 2016, Plaintiff advised Faye via e-mail that Celtic had agreed to release him from his employment early. (*Id.*, ¶¶ 26-27). Faye again responded on behalf of MGM, stating, "*We are ready for you whenever works for you!*" (*Id.*, ¶ 28). On May 12, 2016, Faye sent Plaintiff another email, stating, "*Let's just meet Monday [May 16, 2016 at] 9:00 am to get everything started!*" (*Id.*, ¶ 29).

On May 13, 2016, Faye sent Plaintiff an e-mail informing him that he needed to complete the documentation regarding his education, and complete a pre-hire assessment before attending orientation the following week. (Compl., ¶ 31). Faye indicated that after completion of those two items, MGM and Plaintiff could pick a new start date. (*Id.*). Plaintiff successfully completed the pre-hire assessment. (*Id.*, ¶ 34). On May 17, 2016, Plaintiff sent Faye an e-mail in which he updated her on the status of obtaining his educational records. (*Id.*, ¶ 35). Plaintiff disclosed his homosexual relationship in the e-mail, by stating: "*My partner has been on me about [my MBA] since he completed his PHD a while back.*" (*Id.*).

On May 20, 2016, Plaintiff received an e-mail from Faye, in which she stated, "*Are you able to come this afternoon? We would like to discuss the status of your employment.*" (Compl., ¶ 38).[3] Plaintiff responded that he was out of town at the time, but would be available on a different date. (*Id.*, ¶ 39). On May 22, 2016, Faye sent Plaintiff another e-mail on behalf of MGM, stating as follows: "*Mark—I regret to inform you that due to the incompletion of the background check of supportive documentation—we have to withdraw our offer letter for employment at MGM. We wish you much luck in your future endeavors. Judah and Faye.*" (*Id.*, ¶ 41).

Plaintiff eventually obtained the requested college records. (Compl., ¶ 43). On June 21, 2016, upon learning that the Vice President of Sales and Marketing position with MGM was still open, Plaintiff sent the Bienstocks an e-mail stating in relevant part, "*I would like to meet this week to discuss moving forward with the VP of Sales role with MGM.*" (*Id.*., ¶ 44). Faye responded on MGM's behalf, stating: "*Thank you Mark for your communication. At this time— we are considering other candidates. We appreciate your continued interest in MGM—and will contact you if we wish to pursue a relationship.*" (*Id.*, ¶ 45).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 29, 2016, indicating that MGM discriminated against him on the bases of sex, religion, and sexual orientation. (Compl., attached Exh. 1). The EEOC issued Plaintiff a Notice of Right to Sue letter on August 23, 2017. (*Id.*, attached Exh. 2).

On August 28, 2017, Plaintiff filed his Complaint against MGM in this Court, alleging discrimination on the bases of sex and religion. (Compl., ¶¶ 46-76). Plaintiff also lodges a claim

---

[3] Plaintiff notes that as of May 20, 2016, only one week had passed since Faye indicated Plaintiff and MGM could pick a new start date after MGM received his records. (Compl., ¶ 40).

4

for fraudulent inducement. (*Id.*, ¶¶ 77-90). As stated above, MGM filed the instant Motion to Dismiss Plaintiff's Complaint on September 26, 2017, asserting Plaintiff's claims must be dismissed for failure to state a claim upon which relief may be granted. (ECF No. 6).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

I. **Sex Discrimination**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, provides that "[i]t shall be an unlawful employment practice for an employer—to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual orientation thus is not explicitly a protected characteristic under Title VII. Plaintiff nevertheless maintains MGM unlawfully discriminated against him on the basis of sex when it withdrew its offer of employment after learning of Plaintiff's homosexual relationship, in that it: (1) treated Plaintiff less favorably because of his sexual orientation, which is necessarily discrimination based on sex; (2) treated Plaintiff less favorably because of his association with a person of a particular sex, *i.e.*, his male partner, who is of the same sex as Plaintiff; and (3) treated Plaintiff less favorably on the basis of his nonconformity with sex stereotypes and MGM's preconceived definition of how males should behave. (Compl., ¶ 48). The Court will address Plaintiff's contentions in turn.

With respect to Plaintiff's first claim, that MGM's less-favorable treatment of Plaintiff because of his sexual orientation equates to discrimination based on sex, the Eighth Circuit has squarely held that "Title VII does not prohibit discrimination against homosexuals." *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989), *cert. denied*, 493 U.S. 1089 (1990). *See also Pambianchi v. Arkansas Tech University*, Case No. 4:13CV46 KGB, 2014 WL 11498236, at *4 (E.D. Ark. Mar. 14, 2014) (collecting cases from other circuits so holding). Furthermore, "Congress has rejected a number of proposed amendments to Title VII to prohibit discrimination on the basis of sexual orientation." *Pambianchi*, 2014 WL 11498236, at *4; *see also Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) (listing failed proposed amendments). The Court recognizes that several federal courts have held otherwise in recent opinions, concluding that discrimination on the basis of sexual orientation is a form of sex discrimination.

6

*See, e.g., Hively v. Ivy Tech Community College of Indiana*, 853 F.3d 339, 341 (7th Cir. 2017); *U.S. EEOC v. Scott Medical Health Center, P.C.*, 217 F.Supp.3d 834, 839 (W.D. Pa. 2016). This Court is, however, bound by the law of the Eighth Circuit. *See Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003), *cert. denied*, 540 U.S. 1163 (2004). To date the Eighth Circuit has not changed its position on the issue, and so the Court must dismiss this portion of Plaintiff's claim pursuant to *Williamson*.

Plaintiff next asserts he was treated less favorably because of his association with a person of a particular sex, *i.e.*, his male partner, who is of the same sex as Plaintiff. In support of his argument, Plaintiff cites to *Loving v. Virginia*, 388 U.S. 1 (1967), a case in which the Supreme Court held that "a statutory scheme adopted by the State of Virginia to prevent marriages between persons solely on the basis of racial classifications violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment." *Id.*, P. 2. As noted by MGM, however, *Loving* was decided over twenty years before *Williamson*, and so cannot be construed to overrule *Williamson*.

Finally, Plaintiff maintains he was treated less favorably on the basis of his nonconformity with sex stereotypes, and MGM's preconceived definition of how males should behave. Courts have recognized that "[g]ender stereotyping can violate Title VII when it influences employment decisions." *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 702 (8th Cir. 2012) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). However, "[c]ourts have routinely rejected attempts to use a sex-stereotyping theory to bring under Title VII what is in essence a claim for discrimination on the basis of sexual orientation." *Pambianchi*, 2014 WL 11498236, at *5 (collecting cases). In order to determine whether a plaintiff has stated a claim for discrimination, "most courts generally

7

attempt to distinguish between discrimination based on stereotypical notions of femininity and masculinity and that based on sexual orientation, determining the former is actionable under Title VII while the latter is not." *Id.* (citations omitted).

> Courts have acknowledged the difficulty in drawing a line between sex stereotypes and notions of heterosexuality and homosexuality. Nevertheless, most courts determine the distinction is necessary to adhere to binding precedent that sexual orientation is not a protected characteristic under Title VII.

*Id.* (internal citations omitted).

Upon consideration the Court finds that, as in *Pambianchi*, this Court "need not struggle with exactly where to draw the line between actionable discrimination based on what is alleged to be gender non-conforming behavior and non-actionable discrimination based on sexual orientation." *Id.* The issue is not presented here, because with his allegations Plaintiff makes clear his theory of sex-stereotyping is based solely on his sexual orientation. (*See, e.g.*, Compl., ¶ 51 ("Plaintiff's sexual orientation is not consistent with MGM's and Faye and Judah Bienstock's perception of acceptable gender roles.")). "Sexual orientation alone cannot be the alleged gender non-conforming behavior that gives rise to an actionable Title VII claim under a sex-stereotyping theory," as "[t]o hold otherwise would be contrary to well-settled law that Title VII does not prohibit discrimination on the basis of sexual orientation." *Pambianchi*, 2014 WL 11498236, at *5 (citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764 (6th Cir. 2006)). *See also Phipps v. Housing Authority of New Orleans*, Case No. 15-3296, 2016 WL 164916, at *6 (E.D. La. Jan. 13, 2016) (internal quotations and citations omitted) ("[A] gender stereotyping claim should not be used to bootstrap protection for sexual orientation into Title VII. Without

8

alleging facts that would support a sex stereotyping theory, this is precisely what the plaintiff is attempting to do.").

Based on the foregoing, MGM's Motion to Dismiss Plaintiff's claim of sex discrimination will be granted.

## II. Religious Discrimination

As noted above, Title VII renders it unlawful for an employer to discriminate on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). "Ordinarily, a claim of religious discrimination requires the plaintiff to demonstrate that he informed his employer of his particular religious belief and that he suffered an adverse employment action because of the employer's unwillingness to reasonably accommodate that belief." *Sarenpa v. Express Images Inc.*, Case No. Civ. 04-1538 JRT/JSM, 2005 WL 3299455, at *3 (D. Minn. Sep. 8, 2005) (citing *Seaworth v. Pearson*, 203 F.3d 1056, 1056 (8th Cir. 2001)). "However, Title VII has also been found to encompass situations in which an employee suffers an adverse employment action because he or she does not conform to the religious expectations of his or her employer." *Id.* (citing *Campos v. City of Blue Springs, Missouri*, 289 F.3d 546, 550-51 (8th Cir. 2002)).

In Count II of his Complaint, Plaintiff alleges MGM withdrew its offer of employment because "Plaintiff held religious beliefs regarding homosexual marriage and relationships that could not be reconciled with [the Bienstocks'] religious beliefs regarding homosexual marriage and relationships." (Compl., ¶ 63). Thus, "[t]he sole religious belief to which Plaintiff alleges that [he] failed to conform related to [his] sexual orientation. Plaintiff has alleged no other instances of religious discrimination." *Burrows v. College of Cent. Florida*, Case No. 5:14CV197-Oc-30PRL, 2014 WL 7224533, at *4 (M.D. Fla. Dec. 17, 2014). Upon

9

consideration, the Court finds that Plaintiff's "identification of this single 'religious' belief leads ineluctably to the conclusion that he was [discriminated against] not 'because of religion,' but because of his sexual orientation." *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 293 (3d Cir. 2009). Plaintiff's claim thus "is merely a repackaged claim for sexual orientation discrimination," and as such, must be dismissed as not cognizable under Title VII. *Bennefield v. Mid-Valley Healthcare, Inc.*, Case No. 6:13CV252 MC, 2014 WL 4187529, at *5 (D. Or. Aug. 21, 2014); *see also Prowel*, 579 F.3d at 293.

### III. <u>Fraudulent Inducement</u>

In his final Count, Plaintiff alleges MGM fraudulently induced him to accept its offer of employment. (Compl., ¶¶ 77-90). Specifically, Plaintiff alleges as follows:

> 78. Plaintiff attempted to ascertain whether MGM had any objection to a delay in obtaining his educational records within a four to six week timeline, and exercised reasonable diligence in doing so by promptly informing MGM of said delay.

> 79. Having been informed of the delay, MGM nonetheless acknowledged Plaintiff's subsequent acceptance of MGM's written job offer, and thereafter made affirmative representations to Plaintiff confirming that MGM had no objection to said delay by stating, among other things: *"Wonderful! Congratulations! We are so excited! When will be your anticipated start date?"*

> 80. In failing to disclose any objection to Plaintiff informing MGM that it would take four to six weeks to obtain his educational records, MGM falsely implied that it had accepted Plaintiff's proposed timeline for obtaining his educational records.

> 81. At the time that MGM, by and through its officer and agent Faye Bienstock, made these representations, it knew, or should have known, that it would seek to withdraw or terminate Plaintiff's employment if it did not receive

> Plaintiff's educational records in a timeline shorter than that which Plaintiff proposed.

(Compl., ¶¶ 78-81). Plaintiff continues to allege that MGM made the representations with the intent that Plaintiff rely and act upon them; that Plaintiff had no prior knowledge of the falsity of the representations; and that Plaintiff did in fact rely on the representations to his detriment. (*Id.*, ¶¶ 82-89).

"Fraudulent inducement is a subset of fraudulent misrepresentation." *Ariel Preferred Retail Group, LLC v. CWCapital Asset Management*, Case No. 4:10CV623 SNLJ, 2011 WL 4501049, at *5 (E.D. Mo. Sep. 28, 2011) (citations omitted). Under Missouri law, the elements of fraudulent misrepresentation are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately cause injury." *Harris v. Smith*, 250 S.W.3d 804, 808 (Mo. App. 2008) (internal quotations and citation omitted). "Fraudulent inducement occurs when fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved." *Harvey v. CitiMortgage, Inc.*, Case No. 4:10CV551 TIA, 2011 WL 1226973, at *5 (E.D. Mo. Mar. 29, 2011) (citation omitted).

Upon consideration the Court finds that with his allegations, Plaintiff fails to establish the first element of his claim for fraudulent inducement. In other words, while Plaintiff maintains that in resigning his employment with Celtic he relied on the fact that MGM had accepted the four to six week delay in obtaining his educational records, at no time does he allege that MGM

11

(or the Bienstocks) affirmatively stated as much. Instead, Plaintiff states that MGM failed to disclose any objection to the delay, that it withheld information going to a material fact regarding Plaintiff's accepted offer of employment, and that MGM *impliedly* accepted the delay. (*See* Compl., ¶¶ 80, 82, 86, 87). The Court finds these passive behaviors on the part of MGM insufficient to constitute a "false, material representation," and so Plaintiff's claim for fraudulent inducement by means of fraudulent misrepresentation fails.[4]

As further support for its ruling, the Court notes that in the case principally relied on by Plaintiff, *O'Neal v. Stifel, Nicolaus & Co., Inc.*, the Missouri Court of Appeals stated as follows:

> It is important to note that statements and representations as to expectations and predictions for the future are insufficient to authorize recovery for fraudulent misrepresentation. According to the Petition, Stifel's alleged statements were of present intent to allow O'Neal to enter the corporation as a branch manager. The Petition further alleges Stifel had no intent to make O'Neal an employee at the time it made the alleged representations and this constitutes sufficient allegations of fraudulent misrepresentation.

*O'Neal*, 996 S.W.2d 700, 703-04 (Mo. App. 1999) (internal quotations and citation omitted). The Court finds the instant case is distinguishable from *O'Neal,* for two reasons. First, the Court agrees with MGM that the statements "*Wonderful! Congratulations! We are so excited! When will be your anticipated start date?*", coming as they did during the pendency of a required background check, constituted "mere statements of opinion, expectations, and predictions for the future…insufficient to authorize a recovery for fraudulent misrepresentation." *Ariel*, 2011 WL 4501049, at *5 (internal quotations and citation omitted). Furthermore, the Court finds Plaintiff does not sufficiently contend that at the time it made the representation, MGM had no intent to

---

[4] In their briefs, the parties debate the maintainability of a claim for fraudulent omission. Plaintiff does not explicitly plead such a claim in his Complaint, however, and so the Court will not address the parties' arguments here.

follow through on its alleged promise. Instead, Plaintiff alleges that, "[a]t the time that MGM, by and through its officer and agent Faye Bienstock, made these representations, it knew, *or should have known*, that it would seek to withdraw or terminate Plaintiff's employment if it did not receive Plaintiff's educational records in a timeline shorter than that which Plaintiff proposed." (Compl., ¶ 81 (emphasis added)). With this assertion Plaintiff fails to allege a claim for fraudulent misrepresentation. *See Ariel*, 2011 WL 4501049, at *5 (internal quotations and citations omitted) ("A party's promise to take future action may be considered a misrepresentation of an existing fact, and actionable as fraud, but only if it is accompanied by a present intention not to perform. Thus, a promise to take future action is not actionable absent an allegation that the maker did not presently intend to perform because [t]he mere breach of promise or failure to perform does not constitute a misrepresentation of fact or create a separate claim for fraud."). Count III of Plaintiff's Complaint will therefore be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant MGM's Motion to Dismiss Plaintiff's Complaint (ECF No. 6) is **GRANTED**, and Counts I and II of Plaintiff's Complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Count III of Plaintiff's Complaint is **DISMISSED** without prejudice, and Plaintiff is granted until **Friday, January 5, 2018**, within which to file an Amended Complaint.

Dated this 21st Day of December, 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE